THE CITY OF ROXBURY *vs.* THE BOSTON AND PROVIDENCE RAILROAD CORPORATION.

An act, incorporating a railroad company, with a condition inserted therein that it shall be void if not carried into effect within a time limited, and containing also a proviso, that after twenty years, the commonwealth may, in a certain contingency, purchase the franchise of the road, is not, in virtue of either of these provisions, expressly limited as to its duration, within the act of 1830, *c.* 81, (Rev. Sts. *c.* 44, § 23.)

The Boston and Providence railroad corporation, having accepted their act of incorporation passed since the act of 1830, *c.* 81, by which the legislature reserved power to amend, alter, or repeal, at pleasure, all acts of incorporation which should be subsequently passed, are bound by any reasonable alteration or amendment of their charter, which the legislature may see fit to make; and are consequently subject to the provisions of the general acts of 1842, *c.* 22, and 1849, *c.* 222, relative to railroad crossings.

The selectmen of a town, or mayor and aldermen of a city, in all their proceedings under the statute of 1842, *c.* 22, act in their official capacity for such town or city, and as their agents.

A bill in equity, under *St.* 1849, *c.* 222, § 5, to compel a railroad corporation to raise or lower a highway, in compliance with an order of county commissioners, may be brought by the town or city within which such highway is situated, although the case is 'one in which the mayor and aldermen, or selectmen, may, under *St.* 1842, *c.* 22, on the neglect or refusal of the corporation to carry the decision of the commissioners into effect, maintain an action against the corporation for the expenses thereby incurred.

County commissioners, in the exercise of the jurisdiction conferred upon them by the act of 1842, *c.* 22, relative to the raising or lowering of a turnpike, highway, or town-way, are to make a specific order, and not an order in the alternative.

THIS was a bill in equity, under the act of 1849, *c.* 222, § 5, to compel the defendants, in pursuance of an order of the county commissioners, to raise a highway, called Washington street, at Wait's mill, in Roxbury, where the same is crossed

by the defendants' road, on a level therewith.   The bill alleged
that the defendants, who were duly incorporated on the 22d
of June, 1831, ( *St.* 1831, *c.* 56,) with authority to construct a
railroad from Boston to the line of this commonwealth in See-
konk or Pawtucket, in the direction of Providence, were required
by their act of incorporation, if their railroad, in the course
thereof, should cross any canal, turnpike, or other highway, so to
construct their road as not to impede or obstruct the safe and
convenient use of such canal, turnpike, or highway, and were au-
thorized to raise or lower such turnpike or other highway, so that
the railroad might conveniently pass over or under the same ;
that the defendants located and constructed their road, as au-
thorized by their charter, and in so doing caused the same to
pass through the city (then town) of Roxbury, and to cross a
greatly travelled highway, there situated, called Washington
street, near Wait's mill, so called, on a level with such street, in-
stead of over or under the same, as it ought to have passed,
thereby greatly impeding and obstructing the use of the high-
way, rendering the same unsafe and inconvenient, and endan-
gering the lives and property of all persons having occasion to
pass and repass over the same ; that afterwards an application
of divers citizens was made to the mayor and aldermen of Rox-
bury, who, having viewed the premises and fully considered the
matter, deemed it reasonable and necessary for the convenience
and security of the public, that the highway in question should
be raised or lowered at the crossing, so that the travel thereon
might pass over or under the defendants' road ; that the mayor
and aldermen thereupon, in behalf of the city of Roxbury, no-
tified the defendants thereof, and in writing requested them to
raise the highway at the crossing, which it thereby became
their duty but which they had wholly neglected and refused
to do ; that the mayor and aldermen then applied to the county
commissioners by a petition setting forth the facts aforesaid,
and requesting the county commissioners to decide upon the
reasonableness of their request, and whether or not the raising
or lowering of the highway at said crossing was necessary for
the security of the public; that such proceedings took place
upon this petition, that the commissioners, after hearing the

36 *

parties (on the 18th of March, 1847,) and viewing the premises, were of opinion, and did consider, decide, and determine, (at the April term following,) in due and legal form, that the request of the petitioners was reasonable, and that the raising of the highway aforesaid, at the place where the same was crossed by the defendants' road on a level therewith, was necessary for the security of the public; that it thereupon became the duty of the defendants to raise the highway accordingly, which they were earnestly and repeatedly requested by the mayor and aldermen, in behalf of the city of Roxbury, to do; yet that the defendants had not so raised the same, but had neglected and refused so to do, whereby the lives, limbs, and property of those passing and repassing on the highway were continually exposed to imminent danger, contrary to the terms and provisions of the act incorporating the defendants, and the laws passed in addition thereto, and the general laws in relation to railroads and railroad crossings.

The bill further alleged, that the defendants sometimes pretended that they were not bound to raise the highway at said crossing; sometimes that the county commissioners had no jurisdiction to hear or decide upon the reasonableness of the request to have such highway raised or lowered; and sometimes that such highway ought to be raised by and at the expense of the city of Roxbury, and at the same time pretended that said city had no right for any term of time to stop the cars from running, though necessary for the safety of such persons as might be employed in raising said highway; all which was contrary to law and equity and manifestly unjust.

The prayer of the bill was, that the defendants might be compelled by a decree of this court, at their own expense, and without unnecessary delay, to raise the highway in question, where it crossed their road; that if they should fail to do so, they might be restrained by injunction from further using their road, until the decree of the court in this behalf had been complied with; and that the plaintiffs might have generally such other and further relief, and in such form, as the nature of the case might require.

The defendants demurred to the bill, on the ground that the court had no jurisdiction, and that the bill did not state a case which entitled the plaintiffs to the relief prayed for, or any part thereof.

The eleventh section of the defendants' act of incorporation is as follows : —

" SECT. 11. *Be it further enacted,* That if the said railroad, in the course thereof, shall cross any private way, the said corporation shall so construct said railroad as not to obstruct the safe and convenient use of such way ; and if said railroad shall not be so constructed, the party aggrieved shall be entitled to his action on the case in any court proper to try the same, and shall recover his reasonable damages for such injury ; and if the said railroad shall, in the course thereof, cross any canal, turnpike, or other highway, the said railroad shall be so constructed as not to impede or obstruct the safe and convenient use of such canal, turnpike, or other highway.

" And the said corporation shall have the power to raise or lower such turnpike, highway, or private way, so that the said railroad, if necessary, may conveniently pass under or over the same. And, if said corporation shall raise or lower any such turnpike, highway, or private way, pursuant thereto, and shall not so raise or lower the same as to be satisfactory to the proprietors of such turnpike, or to the selectmen of the town or towns in which said highway or private way may be situated, as the case may be, said proprietors or selectmen may require, in writing, of said corporation, such alteration or amendment as they may think necessary ; and, if the required amendment or alteration be reasonable and proper in the written opinion of a majority of the commissioners of the county in which such amendment or alteration shall be required, and the said corporation shall unnecessarily and unreasonably neglect to make the same, such proprietors or selectmen, as the case may be, may proceed to make such alterations or amendment, and may institute and prosecute to final judgment and execution, in any court proper to try the same, any action of the case against said corporation, and shall therein recover a reasonable indemnity in damages, for all charges, disbursements,

labor, and services occasioned by making such alteration or amendment, with cost of suit."

*B. R. Curtis,* for the defendants.

*D. A. Simmons,* for the plaintiffs.

The points taken by the counsel sufficiently appear in the opinion of the court.

SHAW, C. J.   The only question now before the court is that of the jurisdiction of this court, in equity, of a bill brought by the city of Roxbury against the Boston and Providence railroad corporation, pursuant to the provisions of the statute of 1849, *c.* 222, § 5.

The object of the bill is, to require the defendants to erect a bridge upon and along a highway in Roxbury, called Washington street, over the track of their railroad, where it intersects with that highway, near a place called Wait's mill. The bill avers the importance and necessity of such a bridge to the safety and convenience of passengers on the said highway, and to avoid the danger caused by the use of the railroad at the place of intersection.   It also avers the duty of the defendants to erect such a bridge; the adjudication and order of the county commissioners of Norfolk, having competent jurisdiction of the subject, after due notice to the company and a hearing thereon, requiring them to erect the bridge; notice to the company to comply with the adjudication and order; and their neglect and refusal so to do.

To this bill there is a general demurrer and joinder; and the question is, whether the court have any jurisdiction in equity, and whether the plaintiffs, by their bill, have set forth any title to relief.   This, we think, must depend upon the act incorporating the defendants, and the several acts relating to railroads.   For though the plaintiffs, as one ground of the claim to maintain their bill, insist that it may be well maintained under the head of general equity jurisdiction, which gives this court jurisdiction in cases of nuisance, and that the railroad in its actual condition may be deemed a public nuisance; we are of opinion, for various reasons, which need not be stated in full, that it cannot be maintained on that ground; nor does the bill seem to be framed with that view.   The

manifest purpose of the bill is, not to cause an abatement of a nuisance by an enforced discontinuance or disuse of the railroad, but to render that use compatible with the use of the public highway, by a specific provision requiring a considerable expenditure.

Before proceeding to a consideration of the effect and operation of these enactments, it may be proper to make a few remarks upon the principles, which must govern in construing such statutes. A mere reading according to the letter of the statutes, without regard to the subject-matter, and the manifest intention of the legislature, would often lead to false and unsatisfactory results. We are then to consider their subject-matter, the purposes and objects which the legislature had in view, and the manner in which each enactment may affect other parties, having in view the relations, rights, and duties of such parties, to the subject.

Railroads are a new species of highway, public in their nature, because intended for the use and benefit of the public, and for the construction and maintenance of which, to the extent of taking private property, the legislature have power under the right of eminent domain. They must, of necessity, be constructed nearly on a level, requiring for that purpose, occasionally, deep cuts, embankments, and tunnels, by means of which, private rights and other public rights may be much affected. They are to be used for the transmission of cars for the carriage of passengers and merchandise; and these, to be advantageously used, must be moved by steam power, in large masses, and with great speed. The same qualities, which render railroads useful, also render them dangerous, and require that every precaution should be taken, both in the construction and management of the roads and cars, to guard against such danger.

Another consideration, arising from the course of legislation upon this subject, is, that although railroads are constructed by companies incorporated for that purpose, and with funds raised by the members, and not out of the public treasury, yet it is the policy of these legislative acts to provide that the whole cost of construction and management of the works,

including a fair net income on the outlay, shall be raised and paid out of the revenues arising from the transportation of passengers and merchandise; and these laws assume, that such income will be adequate to that purpose.   No limit, therefore, is placed by law to the toll which a railroad company may claim, except that when the net income shall be over ten per cent on the capital expended, it may, under certain restrictions, be reduced by the legislature.   Such cost, therefore, includes not only the cost of construction and of materials for the structure, but land-damages and other incidental damages to individuals, and such further costs as may be necessary to adapt railroads to other public and private ways, and in all other respects to render them safe and not injurious to individuals and to the public. In the case of *Commonwealth* v. *Boston & Maine Railroad*, 3 Cush. 25, it was held, that where a railroad traversed the land of the commonwealth, though such road was a public work sanctioned and authorized by the legislature, yet as the cost of construction, including the value of land necessarily taken, was to be paid ultimately out of the revenues of the road, though advanced by the company in the first instance, the commonwealth, like any other proprietor, whose land was appropriated, might claim and have damages for the land thus taken.

Another consideration is, that with few exceptions, as in the case of turnpikes, bridges, and canals, towns and cities in their corporate capacities are bound to make and repair all highways, and are made responsible by statute for any damage to individuals arising from defects therein, which render them dangerous.   In the case of *Currier* v. *Lowell*, 16 Pick. 170, it was held, that the town was liable for the dangerous condition of a highway, although such condition was caused by an excavation made by a railroad company, in the execution of their powers under an act of incorporation.

It is necessary to allude to but one other consideration of a general nature applicable to this subject; which is, that as towns and cities, being corporations, must necessarily act by agents, although in special cases statute powers may be conferred on mayor and aldermen, or selectmen, such as the power

City of Roxbury *v.* Boston & Providence Railroad Corporation.

of granting licenses, laying out town-ways, subject to the ratifi-
cation of their towns, and the like; yet, in general, they are
the agents and general administrative officers of cities and
towns; and where the concerns of a city or town are not espe-
cially confided to other boards or officers, they are to be super-
intended by the mayor and aldermen, or selectmen, respectively.
In the language of the old statutes, selectmen have charge of
the prudential affairs of the town, including cases not otherwise
specially provided for.

With these considerations in view, we proceed to an exa-
mination of the several acts, on which the question now before
us depends.

The defendants were incorporated on the 22d of June, 1831,
by the statute of 1831, *c.* 56.   Their charter contains the usual
provisions, and enacts in the eleventh section, that if the rail-
road shall, in the course thereof, cross any canal, turnpike, or
other highway, the road shall be so constructed as not to im-
pede or obstruct the safe and convenient use of such canal,
turnpike, or other highway; and that the company shall have
the power to raise or lower such turnpike, highway, or private
way, so that the railroad, if necessary, may conveniently pass
under or over the same.   The statute then proceeds to direct,
that in the case of a highway, if not raised or lowered to the
satisfaction of the selectmen, they may, after notice in writing,
not complied with by the company, apply to the county com-
missioners, who may finally order and direct what alterations
shall be made; and if not made, the selectmen may proceed to
make such alteration, and may institute and prosecute any
action of the case against the corporation, and may recover
a reasonable indemnity in damages, for all charges in that
behalf, with costs of suit.

This charter was granted after the passing of *St.* 1830, *c.* 81,
(March 11, 1831,) reserving to the legislature a power to amend,
alter, or repeal at pleasure all acts of incorporation, which
should be afterwards passed, as if they contained an express
provision to that effect, unless there should have been inserted
therein an express limitation as to their duration.

It is difficult to understand the force and effect of this last

clause; whether the whole power to amend, alter, or repeal, depends on the condition, that there is no clause limiting the duration of the act, or whether it intends that where a grant is made in the charter for a specified time, it shall not be so construed as to limit or shorten such duration of the charter, is a question which it may be necessary perhaps to consider farther, when it arises. We can perceive, in this act of incorporation, no such express limitation, as to its duration. There is a provision, that the act shall be void if not carried into effect within a limited time; and another which provides, that after twenty years, on the contingency of the revenues' having paid the entire cost of the road, with ten per cent interest, the commonwealth may purchase it. These do not, in our judgment, constitute an express limitation of duration, within the meaning of the act.

The defendants, then, having accepted their charter, after the above act, and whilst it was in force, took the charter subject to those provisions, and must be bound by any reasonable amendment and alteration, which the legislature might thereafter make.

The next act having a bearing on this subject is *St.* 1842, *c.* 22, which is a general act relative to railroads. This act is general, and applies to all railroads, and is in terms specifically applicable to the present case. It authorizes the selectmen of towns, and the mayors and aldermen of cities, wherein any turnpike, highway, or town-way is crossed on the same level by any railroad, if in their opinion it is necessary to the security of the public, that such highway or town-way shall be raised or lowered, so as to pass over or under the railroad, and the company, after written notice, neglect to do it, to apply to the county commissioners, who are vested with jurisdiction to hear and decide, with costs to the prevailing party; and if the company shall fail to proceed and carry into effect the decision of the commissioners, such selectmen or mayor and aldermen may proceed to do it, and may institute an action on the case against such corporation and recover the amount of expense so incurred.

These provisions vary very slightly, if at all, from those con-

tained in the act of incorporation; they perhaps declare a little more explicitly the duty of the company to provide, at their own expense, for the safety of the public travel on the highway, in the particular in question, and point out a little more particularly the practical course to be adopted. In one respect, perhaps, this statute renders explicit what might have been doubtful in the original act, namely, that if after the railroad has been laid down and used over a highway on tne same level, it shall be found unsafe, in the first place, in the judgment of the selectmen, who are the general agents of the municipal corporation, and afterwards upon an appeal and full hearing before the county commissioners, an impartial tribunal competent to judge, it shall be the duty of the railroad company to raise or lower such way. If this act adds any thing, or makes more explicit the duty imposed by the act of incorporation, it affects the remedy only, and perhaps would be within the competency of the legislature, without any reservation of the power of amendment; but if otherwise, it was fully warranted by the reservation made by the statute of 1830, c. 81.

A question might have arisen upon this statute, whether, if the railroad company had failed to do the act required, and it had been done, as the statute directs, by the selectmen, a suit for indemnity or reimbursement should be brought by the selectmen, in their own names, or in the name of the town. As a question, in respect to the mere form of action, perhaps it is not very material; as a question, who is to do the duty, or rather at whose expense it is to be done, in the first instance, in case of the failure of the railroad company, it is important. The thing to be done is, to make a public highway safe and convenient; this is the duty of the town. It is to be done, if the selectmen judge it necessary, and give notice. In all these respects, the selectmen act in their official capacity for the town, and as their agents.

When, therefore, it is provided, that if the company fail to do the act required, the selectmen may proceed and do it, does the statute mean at their private cost, and in their private capacity? We think not.

The selectmen have the control of the town treasury, and may disburse moneys for any and every public use, for which the town is liable.    They are to do this duty as they do other corporate duties, for the benefit and at the expense of the town.    When, therefore, by the act of incorporation, it is provided, that the selectmen may prosecute any action of the case, and recover reasonable indemnity; as indemnity is a remedy for the party damnified, to have reimbursed, or replaced in the treasury, from which it had been taken, a sum of money, there would be plausible reasons to maintain, that the action might be brought in the name of the town.    Where a promise was made to the mayor and aldermen of a sum of money, which, when recovered, would enure to the use of the city, it was held, that the city might sue for it in their own name. *Boston* v. *Schaffer*, 9 Pick. 415.    But even were it held, that by force of the statute, the selectmen might sue in their own names, it would be as trustees for the town, and in their right, and bound to apply the amount recovered to their use.

The general railroad act may be referred to, as showing, that whenever any thing is to be done, which may affect the safety and convenience of highways and town-ways, notice is to be given to the selectmen, and they are to judge and act; manifestly indicating that they are the representatives of towns in this respect, and the guardians of their rights, as those responsible for the safety and convenience of public ways. Rev. Sts. c. 39, §§ 68, 69, 70.

We are thus brought to the consideration of the act of 1849, c. 222, upon which this bill is brought.    This is also a general act relating to railroad crossings.    The fourth section gives original jurisdiction to county commissioners of all questions of obstruction to turnpikes, highways, or town-ways, caused by the construction or operation of railroads.    The fifth section directs, that the supreme judicial court shall have jurisdiction in equity, and may compel railroad corporations to raise or lower any turnpike, highway, or town-way, where the county commissioners have decided, or may decide, in due and legal form, that such raising or lowering is necessary for the secu-

rity of the public, and to compel railroad corporations to comply with the orders, decrees, and judgments of county commissioners, in all cases touching obstructions by railroads in any of such ways. The section, giving jurisdiction to county commissioners, is not necessary to this case, because they had it before, both by the act of incorporation and the statute of 1842, so far as to hear the parties upon application of the selectmen, and to adjudge and decide upon the duty of the railroad company. This they did in 1847.

It appears to us, from this view of the enactments on the subject, that the case set forth in the bill is within them, and must be governed by them, unless it is taken out of their operation on some of the grounds relied on in support of the demurrer.

It is objected, that the city of Roxbury is not the competent party to prosecute this suit, and that it should have been brought either by the mayor and aldermen or by the commonwealth.

This objection assumes, that if the work had been done by the mayor and aldermen, in conformity with the statute of 1842, it must have been done at their private expense, and the suit brought for their personal reimbursement. This, indeed, is the construction contended for by the defendants, but, for reasons already given, we think it is not the true one. But were it even so, it would not follow, that they must bring this suit; this remedy may have been thought necessary, because the former was supposed to be doubtful or uncertain. The statute does not state by whom the bill must be brought. But it is a civil suit, and must be designed for the relief of those who suffer a grievance or burden. The object of the proceeding is to secure a safe and convenient highway, which has been rendered dangerous by a railroad; the city are bound to do it at their own expense, if not done by the defendants. The relief sought is for the direct benefit of the city, in their corporate capacity, and there seems to be no reason why they should not take the burden, and have the benefit of pursuing the remedy provided by law. There is no direction, that the suit shall or may be brought in the name of the common-

wealth ; and there seems to be no reason or analogy, requiring or authorizing it to be so brought.

The next objection is, that there is nothing to show, that there is not a plain and adequate remedy at law, that is, nothing to prevent the mayor and aldermen from doing the work, and bringing their action pursuant to *St.* 1842, *c.* 22, to recover the amount expended.   To this there are several answers.   It is alleged in the bill, though perhaps not very definitely, that the defendants have refused to permit them to make such bridge over their road, or so to arrange the running of their cars, as to enable the mayor and aldermen to do the work safely.   Perhaps this is not so particularly stated, as to make it a matter admitted by the demurrer.   But independent of this, the work is of such a nature that it would be difficult to accomplish it, without a good understanding and ready co-operation between those who are doing the work and those who are running the trains.

Again, if there be any color to maintain, as it has been maintained by the defendants, that the mayor and aldermen must do this work at their own expense, with no other indemnity than that to be obtained by a contested suit with the defendants, this of itself would render that remedy any thing but plain, adequate, and complete.   But further, the suffering, the grievance, from which relief is sought, is that of the city ; they have no means of compelling the mayor and aldermen to do the work, either at their own or at the city's expense, and the city have no remedy at law against the corporation.

It is further objected, that this proceeding is analogous to a petition for a *mandamus,* and that that writ will not lie, until all other remedies are exhausted.   This analogy is not very obvious; on the contrary, it may be said, that although a writ of *mandamus,* at common law, might have been applied for, before the statute ; yet a milder and more adequate and efficient remedy was provided by bill in equity, because it could be shaped, modified, and changed so as better to adapt it to the precise exigency of each case, and to the purpose of enforcing a specific performance of the duty required.   It also gives the defendants the privilege of a party, answerable for costs, in case the application is groundless.

The next objection is, that there has been an unwarrantable delay in bringing the bill ; since the order and adjudication of the county commissioners were made in April, 1847, and this bill was not commenced till October, 1849.   In truth, the act giving this specific remedy, by bill in equity, was passed in May, 1849, and this suit was commenced for the next succeeding term of the supreme judicial court for the county of Norfolk.   The cases* cited to show that a court of equity will not sustain a bill for a specific performance, after an unreasonable delay, apply to a specific performance of contracts for the purchase and sale of lands, and have no very direct application in the present case.

Several other points were taken by the defendants' counsel in argument, which have been already alluded to.   One is, that the road having been once constructed without objection, the direction in the eleventh section of the charter is exhausted ; that no right was reserved in the legislature, to amend the charter; and that if the company have not conformed to the conditions of their charter, the only remedy is by indictment. As already stated, we think the authority was reserved at least so far as to make new and additional provisions, effectually to enforce the duty, required by the act of incorporation, to make all such improvements as to render the highways safe and convenient, and to make them at their own expense, and eventually as a charge upon the revenues of the road ; and if not sufficient, in the first instance, to require them from time to time, as experience and the exigencies of public safety might require, to make further improvements.

The last objection is, that the order and adjudication of the county commissioners required the defendants to raise the public highway by means of a bridge over the railroad; whereas the law was intended to give to the defendants an option either to raise or lower the highway, and so the order exceeds their authority and is void.   Perhaps the statute, in this particular, may be regarded as a little equivocal, and designed

---

* *People* v. *Seneca Common Pleas*, 2 Wend. 264; *Vigers* v. *Pike*, 8 Cl. & Fin. 651 *Guest* v. *Homfray*, 5 Ves. 818; *Watson* v. *Reid*, 1 Russ. & M. 236

37*

in the first instance to give the option to the company, either to raise or lower the road. But it is provided, even in the act of incorporation, that the selectmen, after the company have adjusted the highway to their road, if such adjustment is not satisfactory to them, may require an alteration; and if in the opinion of the county commissioners necessary, the highway shall be altered and amended accordingly by the company.

In the construction of the act of 1842, *c.* 22, it will, we think, admit of this meaning, that if the selectmen think it necessary, that the highway should be raised so as to pass over, or if they think it necessary that it should be lowered so as to pass under, the railroad, they may in writing request the company so to raise or so to lower, and on refusal, may appeal to the county commissioners. But whether this is so or not, the court are of opinion, that as the county commissioners are finally to decide upon the question, their decision, in order to be definitive and certain, must be specific. The provision is, that if the commissioners, after notice and hearing the parties, shall decide that the raising or lowering of the way is necessary, the corporation shall comply. In the mere words there is some ambiguity; but being in the nature of a final adjudication, and requiring something precise and specific, it is competent for the commissioners to order the way to be raised or to be lowered, according to their views of the public safety. The subsequent clause in the section requires the company to carry into effect the decision of the commissioners; otherwise the selectmen or mayor and aldermen may proceed to do so. The clause is not explicit, but it throws some light on the subject, implying that the commissioners have ordered something specific, and not one of two things, to be done, and that the right of election no longer exists. So when this court is called upon by the statute of 1849, to compel railroad companies to raise or lower, and generally to carry into effect the decision and decree of the commissioners, it carries an implication, that such decree is specific, and requires a specific performance. This is a remedial statute, and this construction is warranted by the maxim, that a remedial statute shall be so construed, where there is

room for construction, as to advance and promote the remedy provided by it. We think, therefore, that the county commissioners did not exceed their authority, in adjudging that the public safety required the way in question to be raised, and in directing and ordering that it should be raised accordingly.

*Demurrer overruled.*