[Civil No. 665.   Filed November 1, 1899.]

[59 Pac. 101.]

A. E. BAKER, Plaintiff and Appellant, v. S. J. FLEMING et al., Defendants and Appellees.

1. VENDOR'S LIEN—MINES AND MINING—REAL PROPERTY.—Where mining property is conveyed by a deed absolute, and no express lien is reserved for the unpaid portion of the purchase money, there is no implied equitable lien in favor .of the vendor for such unpaid purchase price.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Yavapai. R. E. Sloan, Judge. Affirmed.

The facts are stated in the opinion.

Ross & O'Sullivan, and E. M. Sanford, for Appellant.

Andrews & Ling, H. D. Stocker, of Counsel, for Appellees.

DAVIS, J.—On the fourteenth day of July, 1896, the appellant, A. E. Baker, sold and conveyed to S. J. Fleming and R. T. Tustin, by deed absolute, certain mining property situated in Yavapai County, receiving part of the purchase price thereof in cash and the written obligations of the said Fleming and Tustin for the residue. No express lien was reserved, however, for the unpaid portion of the purchase money. On or about the twentieth day of August, 1896, the Providence Gold Mining Company took a conveyance of said property from Fleming and Tustin, with full knowledge on its part of the existence of the said purchase-money indebtedness to Baker. Thereafter, in a suit brought by Baker, it was sought to establish and enforce a vendor's lien against the property for the balance of the purchase money owing to him. From the judgment of the district court denying his right to such lien he has prosecuted this appeal.

The sole question presented for decision here is whether a grantor of real estate by absolute conveyance has an implied equitable lien thereon for the unpaid purchase money. If such a lien arises at all, it must, on principle, prevail alike against the grantee himself and all subsequent purchasers with notice. The doctrine of the English court of chancery, which recognizes and upholds such a lien, has been adopted in some of the states, rejected in some, and remains undecided or doubtful in others. There seems to have been no settled adjudication of the question in this territory, and we therefore feel at liberty to determine it as one of first impression. A considerable diversity of opinion exists concerning the origin of the vendor's lien. It has been accounted for as a trust, as an equitable mortgage, as arising from natural equity, and as a contrivance of the chancellors to evade the unjust rule of the early common law by which land was free from the claims of simple contract-creditors. The grounds upon which the doctrine seems generally to have been rested in the earlier English cases were those of natural equity, a supposed intention of the parties, and a trust arising out of the unconscientiousness of the vendee's holding the land without paying the price. In *Ahrend* v. *Odiorne,* 118 Mass. 261, Mr. Justice Gray, now of the supreme court of the United States, after an elaborate examination of the question, concluded that the foundation of the doctrine was that justice

required that the vendor should be enabled, by some form of judicial process, to charge the land in the hands of the vendee, as security for the unpaid purchase money, and that the restriction of the doctrine to real estate suggested the inference that the court of chancery was induced to interpose by the consideration that by the law of England real estate could not be attached on mesne process, nor, except in certain cases, and to a limited extent, be taken in execution for debt. The learned judge rejected the theory of natural equity, because that would apply to a sale of chattels as well as of land; and the theory of a trust, as that would include too many other cases to which confessedly the doctrine had not been extended. The presumption of an intention of the parties is thus disposed of by Mr. Justice Gibson, in *Kauffelt* v. *Bower,* 7 Serg. & R. 64, 10 Am. Dec. 428: "The implication that there is an intention to reserve a lien for the purchase money in all cases where the parties do not, by express acts, evince a contrary intention, is in almost every case inconsistent with the truth of the fact, and in all instances, without exception, in contradiction of the express terms of the contract, which purports to be a conveyance of everything that can pass." Speaking of the nature of the vendor's lien, Mr. Justice Story, in *Gilman* v. *Brown,* 1 Mason, 191, Fed. Cas. No. 5,441, said: "It is a right which has no existence until it is established by the decree of a court in the particular case, and is then made subservient to all the other equities between the parties, and enforced in its own peculiar manner, and upon its own peculiar principles." In one of the earliest English cases which contains a discussion of the doctrine, Lord Eldon observed: "It has always struck me, considering this subject, that it would have been better at once to have held that the lien should exist in no case, and the vendor should suffer the consequences of his want of caution; or to have laid down the rule the other way so distinctly that a purchaser might be able to know, without the judgment of a court, in what cases it would and in what cases it would not exist." *Mackreth* v. *Symmons,* 15 Ves. 329. "No other single topic belonging to the equity jurisprudence," says Mr. Pomeroy, "has occasioned such a diversity, and even discord, of opinion among the American courts as this of the grantor's lien. Upon nearly every

question that has arisen as to its operation, its waiver or discharge, the parties against whom it avails, and the parties in whose favor it exists, the decisions in different states, and sometimes even in the same state, are directly conflicting.'' 3 Pomeroy's Equity Jurisprudence, sec. 1251. The doctrine has, from the beginning, met with pronounced opposition in this country, and Mr. Pomeroy ventures the opinion ''that the original grounds and reasons for admitting the grantor's lien do not exist here, and the lien itself is not in harmony with our general real-property law. The tendency both of our legislation and of our social customs is to make land a subject of commerce, and its transmission as free as possible; while the rights of grantors can be fully protected by mortgages, which, in nearly all the states, are widely different from the instrument bearing the same name in England.'' Investigation shows that the lien has either been condemned by the courts or legislated against in the following states: Connecticut, Delaware, Georgia, Kansas, Maine, Massachusetts, Nebraska, New Hampshire, North Carolina, South Carolina, Oregon, Pennsylvania, Vermont, Virginia, Washington, and West Virginia. The supreme court of the United States has never enforced the lien except where in harmony with the jurisprudence of the state in which the action was brought. *In Bayley* v. *Greenleaf,* 7 Wheat. 46, 5 L. Ed. 393, that court, speaking through Mr. Chief Justice Marshall, said: ''It is a secret, invisible trust, known only to the vendor and vendee, and to those to whom it may be communicated in fact. To the world, the vendee appears to hold the estate devested of any trust whatever, and credit is given to him in the confidence that the property is his own in equity as well as law. A vendor, relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is in some degree accessory to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien.'' In *Ahrend* v. *Odiorne, supra,* Mr. Justice Gray says: ''The decisions in the courts . . . in favor of the doctrine, which are collected in the notes to 2 Sugden on Vendors, 8th Am. Ed., c. 19, suggest no reasons and afford no grounds why we should now, for the first time, adopt in this commonwealth a doctrine which has never been supposed by the profession to be in

force here; which would introduce a new exception to the statute of frauds; which, as experience elsewhere has shown, tends to promote uncertainty and litigation; and which appears to us to be unfounded in principle, unsuitable to our condition and usages, and unnecessary to secure the just rights of the parties. If no third person has acquired any rights in the land by *bona fide* attachment or conveyance, the original vendor may secure payment of the debt due him for the purchase money by the usual attachment or mesne process. If any third person has acquired rights in the property, there is no reason why equity, any more than the common law, should interpose to defeat them.'' In the main, the courts which have expressed disapprobation of the doctrine have based their decisions upon the ground that it is inconsistent with the general policy prevailing in this country of making all matters of title dependent upon record evidence. There is no statutory recognition of the doctrine in this territory. The common law of England is adopted and made the rule of decision for our courts ''so far only as it is consistent with and adapted to the natural and physical condition of the territory, and the necessities of the people thereof, and not repugnant to, or inconsistent with . . . the laws of the territory, or established customs of the people.'' Rev. Stats., par. 2935. After giving to the question the deliberate consideration which its importance demands, we are forced to the conclusion that this principle of an implied lien for purchase money can have no just application in this territory. It is opposed to the policy of our legislation, which aims to make the title to real estate as simple and easily understood as possible, and to facilitate its transfer and improvement by discouraging all secret or latent equities, and requiring conveyances and encumbrances thereof to be made matters of public record. Here, our attachment law readily permits a debt to become a lien before judgment, and debts generally are a lien upon the lands of decedents. The doctrine being thus repugnant to our registration law, ill-suited to our condition, and by no means essential to the interests of justice, we ought not to adopt it. The judgment of the district court will be affirmed.

Street, C. J., and Doan, J., concur.