## JOSEPH A. FOWLKES *v.* FRANCIS E. LEA.

1. **DEEDS.** *Acknowledgment of purchase money. Receipt. Parol evidence.*

   An acknowledgment of the payment of the purchase money contained in a deed is but a receipt and may be contradicted by parol evidence.

2. **SAME.** *Statute of limitations.  Code* 1892, § 2737.  *Written promise.*

   A recital of a consideration in a deed, which is proved not to have been paid, is a promise in writing by the grantee to pay it, and such promise is only barred by the statute of limitations (Code 1892, § 2737), applicable to written promises.

FROM the chancery court of Monroe county.

HON. HENRY L. MULDROW, Chancellor.

Fowlkes, appellant, was complainant, and Lea, appellee, defendant in the court below.  From a decree in defendant's favor the complainant appealed to the supreme court.

On the 12th day of December, 1896, appellant, Joseph A. Fowlkes, executed the following deed to his son, Lee A. Fowlkes, conveying about one hundred and forty-eight acres of land described in the deed—to wit: "This indenture made on the 12th day of December, 1896, by and between J. A. Fowlkes, of Monroe county, state of Mississippi, party of the first part, and Lee A. Fowlkes, of the county of Monroe, state of Mississippi, party of the second part: Witnesseth, that said party of the first part, in consideration of the sum of four hundred dollars to ———— paid by the said party of the second part, the receipt of which is hereby acknowledged, does by these presents grant, bar-

gain, and sell and confirm unto the said party of the second part and his heirs and assigns, the following described lots, tracts, or parcels of land, being and situate in the county of Monroe and state of Mississippi—to wit: [Here describing the land.]" Lee A. Fowlkes married, and afterwards died, and his widow married appellee, Francis E. Lea, and died, leaving him her sole heir. On November 1, 1901, appellant Joseph A. Fowlkes, filed the bill in this case to enforce a vendor's lien on the lands described in the deed to Lee A. Fowlkes, alleging that there was still due four hundred dollars and interest from the date the sale was made. The bill further alleged that "while said deed is ambiguous as to whether the said purchase money was paid or not, in its recitals, complainant avers no part thereof has been, in fact, paid." The defendant, Lea, answered the bill, denying that the purchase money had not been paid, and stated that it had been paid in full. He set up the three-years statute of limitations in bar of the claim. On these pleadings considerable testimony was taken on the issue as to whether the purchase money had been paid. The court below, in its final decree, found that the land had been conveyed by appellant to Lee A. Fowlkes for four hundred dollars, and that no part of the purchase money had been paid, but held that the vendor's lien was barred by the three-years statute of limitations, and dismissed the bill.

*Gilleylen & Leftwich,* for appellant.

The recital of payment in the deed does not destroy the vendor's lien, but the recital is *prima facie* evidence of payment which the vendor must explain or disprove in enforcing the lien. *Gordon* v. *Manning,* 44 Miss., 757; *Kelly* v. *Karsmer,* 2 So. Rep., 164; Devlin on Deeds, sec. 1251.

The explanation of the recital in the deed has been furnished by the vendor. The recital of payment in the face of the deed is a mere receipt, and, like all receipts, evidence can be introduced to contradict it. Devlin on Deeds, sec. 1251. The recital of consideration may always be varied by parol. *Meyer* v.

*Casey,* 57 Miss., 615; *Pollen* v. *James,* 45 Miss., 129; *Cocke* v. *Blackbourn,* 57 Miss., 689; *Hiller* v. *Jones,* 66 Miss., 636; *Miles* v. *Miles,* 78 Miss., 904.

As between the vendor and purchaser or his heir or grantees with notice when there is no independent security taken by the vendor the *onus* is on the purchaser to prove a waiver of the vendor's lien. *Crompton* v. *Prince,* 3 So. Rep., 519; *Owen* v. *Boukhead,* 76 Ala., 143.

A contract unilateral is made bilateral by the non-signing party's acceptance under it. *Marqueze* v. *Caldwell,* 48 Miss., 23; *Peevey* v. *Haughton,* 72 Miss., 918.

If the argument made is good, no matter how full and accurate the recital is on the face of the deed, the vendee could never be made to pay unless he signed a collateral undertaking. The vendee rarely signs anything. He accepts the deed and the land. By this acceptance he binds himself effectually to perform all the conditions of the deed, either express or implied, which are provable by a writing. *Washington* v. *Soria,* 73 Miss., 665; *Cock* v. *Abernathy,* 77 Miss., 872.

The learned chancellor seemed to think that § 2739, Code 1892, applied instead of sec. 2737 as decided in *Washington* v. *Soria, supra.* The court took too narrow a view. He seemed to think also that this case was distinguished from *Washington* v. *Soria* by the fact in that case that there was a reservation of a lien to secure the deferred payments which were named in the face of the deed. As we have already shown, the express reservation of a lien is not necessary, the law does that. The only other question is, Must the fact that the consideration of four hundred dollars was unpaid have been recited expressly in the face of the deed to set in motion the six-year statute? The contract of the sale of the land in all its essential features is written. By accepting the deed, putting it of record, and entering into possession of the land, Lee A. Fowlkes became a party to the contract, rendered it mutual, and is bound by all its expressed and implied terms.

The argument adopted by the lower court here is tantamount to that overruled in *Roberts* v. *Griswold,* 35 Vt., 496, in the language quoted in *Peevey* v. *Haughton,* 72 Miss., 925:

"But it is claimed, again, that the consideration should appear in writing, in order to give validity to the guaranty. This must either mean that the acceptance of the defendant's proposition must be in writing or a correlative undertaking on the part of the plaintiff to render future services must be in writing. We can readily understand that this might be required in some cases, as when the guaranty itself did not embody substantially the material and effective terms of the contract, and where resort to parol evidence should be necessary to show what the contract was in its terms and effect; but we do not understand that this has ever been required where all there is to be done by the other party is merely to accept the proposition in the terms in which it is made, and to perform the consideration, either by paying or doing the thing proposed."

*George C. Paine,* for appellee.

The court will observe from all the testimony in the case that there is not a scintilla of evidence to the effect that there was a note or any other written memoranda of any promise by the appellee to pay for the land. The question, then, is, Was the promise barred when the bill was filed? and, if so, then the decree of the chancellor is correct, and the case ought to be affirmed. The deed was made December 12th, 1896. The bill was not filed until November 1st, 1901. Under the law as announced in *Trotter* v. *Erwin,* 27 Miss., 772; *Littlejohn* v. *Gordon,* 32 Miss., 235; *Avent* v. *McCorkle,* 45 Miss., 221; *Proctor* v. *Hart,* 72 Miss., 290, the vendor's lien is barred.

The cases of *Washington* v. *Soria,* 73 Miss., 665, and *Cock* v. *Abernathy,* 77 Miss., 872, relied upon by counsel in the lower court are not antagonistic to the right of the appellee in the contention that the three-years statute defeats any right the appellant may have. In *Washington* v. *Soria, supra,* there

were three notes evidencing the deferred payments as well as a recital in the deed reserving a lien upon the land. In the case of *Cock* v. *Abernathy, supra,* there were the writings of the power of attorney and the receipt, both of which evidence the fact that the land was sold on credit and had not been paid for. In the case at bar there is absolutely no writing of any kind. The only evidence that the land had not been paid for is the unsatisfactory testimony of the witnesses for the appellant, stating that Lee Fowlkes had said he had not paid for the land.

The only way a vendor's lien could possibly have arisen in this case under the testimony for the appellant is by and through the oral promise or declaration of Lee Fowlkes; it was created by or arose on account of the contract of sale. The vendor's lien is but an incident of the debt. What, then, was the debt in the case at bar, and the evidence of its existence? The only answer is, The debt was the four hundred dollars purchase money, and the evidence of its existence is the oral promise by Lee Fowlkes to pay it. This lien being created by the law can and must coexist with the debt and cannot survive it. *Trotter* v. *Erwin,* 27 Miss., 772.

Here the debt being based alone on the oral promise of Lee A. Fowlkes the lien, which is but an incident of the debt, is barred when the debt is barred.

WHITFIELD, C. J., delivered the opinion of the court.

It seems immaterial whether the word "be" or the word "him" be the proper word to be supplied in the blank space of this deed. The deed, at all events, contains an acknowledgment of the receipt of the four hundred dollars; and, whether "be" or "him" be supplied, it would still contain such acknowledgment of payment. But this acknowledgment of payment is, in effect, merely a receipt, and may be contradicted by parol. It was contradicted by parol in this case. The chancellor found as a fact, and we concur in that finding, that nothing had been paid, and the deed may therefore be read as if the recital were as

follows on this point: "Witnesseth, that the said party of the first part, in consideration of the sum of four hundred dollars, does by these presents grant, bargain and sell, convey," etc., "unto the said party of the second part," etc. Now, this recital plainly states that the land had been sold to the grantee for the consideration of four hundred dollars. The question for solution in this case is, Is this recital a sufficient statement of the terms of the grant to make applicable the statute of limitations relating to written promises? The grantee accepted this deed, went into possession under it, and enjoyed the fruits of the property under it. The general principle applicable to this kind of case is clearly stated in *Locke* v. *Homer,* 131 Mass., 102 (41 Am. Rep., 199), as follows: "The fact that the agreement of the defendant is contained, not in the bond, covenant, or indenture executed by himself, but in a deed poll made to and accepted by him, affects the mode of declaring, only, and not the extent of his liability. By the law of this commonwealth, affirmed by many decisions, the grantee, by the acceptance of the deed, becomes liable to perform, according to its terms, any promise or undertaking therein expressed to be made in his behalf; although, not having himself signed the deed, he must, while the old forms of action were retained, have been sued in assumpsit, and not in covenant. *Goodwin* v. *Gilbert,* 9 Mass., 510; *Fletcher* v. *McFarlane,* 12 Mass., 43; *Phelps* v. *Townsend,* 8 Pick., 394; *Guild* v. *Leonard,* 18 Pick., 511; *Newell* v. *Hill,* 2 Metc., 180; *Pike* v. *Brown,* 7 Cush., 133; *Braman* v. *Dowse,* 12 Cush., 227; *Jewett* v. *Draper,* 6 Allen, 434; *McCabe* v. *Swap,* 14 Allen, 188, 192; *Maine* v. *Cumston,* 98 Mass., 317; *Fenton* v. *Lord,* 128 Mass., 466; *Dickason* v. *Williams,* 129 Mass., 182, 184 (37 Am. Rep., 316); *Coolidge* v. *Smith,* 129 Mass., 554. See, also, *Rogers* v. *Eagle Fire Co.,* 9 Wend., 611, 618; *Rawson* v. *Copland,* 2 Sandf., ch. 251. Such a promise is not within the statute of frauds, because it is a promise implied by law from the acceptance of the deed, and because it is a promise to pay the promisee's own debt to another person.

*Goodwin* v. *Gilbert* and *Pike* v. *Brown*, above cited; *Alger* v. *Scoville,* 1 Gray, 391; *Hubon* v. *Park,* 116 Mass., 541." To the same effect are *Schmucker* v. *Sibert,* 18 Kan., 111 (26 Am. Rep., 765); *Fort* v. *Allen,* 110 N. C., 191 (14 S. E., 685); *Trotter* v. *Hughes,* 12 N. Y., 75 (62 Am. Dec., 137); *Atlantic Dock Co.* v. *Leavitt,* 54 N. Y., 39 (13 Am. Rep., 556); *Ames* v. *Robt. Moir & Co.,* 27 Ill. App., 88. And this is the doctrine of *Washington* v. *Soria,* 73 Miss., 665 (19 South., 485; 55 Am. St. Rep., 555). In *Fort* v. *Allen, supra,* the court says: "Now, it is true that it is not every recital that binds; but, without entering into a discussion of the doctrine of recitals, abounding, as it does, in many refinements and nice distinctions, it is sufficient to say, for our present purpose, that where it is the intent of the parties to place the existence of a fact beyond question, or to make it the basis of the contract, the recital will be effectual, and neither party will be permitted to deny it."

The principle with which we are concerned is this, sharply stated: Is the recital that the grantor conveyed the land to the grantee in consideration of four hundred dollars a sufficient statement of the terms of the contract to make the statute of limitations relating to written promises the only one applicable? On this precise proposition we quote the following authorities above referred to. In the case of *Ames* v. *Moir & Co.* there was an action of assumpsit for goods delivered on an instrument containing the following recital: "Contract. Chicago, June 9, 1870. I have this day bought of Robert Moir & Co., one hundred (100) barrels highwines, 'iron bound,' at one dollar and seven cents ($1.07) per proof gallon. [Signed] Wilson Ames." After reviewing several cases, the court says: "There may be a contract in writing, although it contains no express promise to pay the consideration. Strictly speaking, there is no such express promise in Ames' contract. But when a state of facts is acknowledged in writing to exist, which imports an obligation to pay, the law implies the obligation, but the contract is not thereby reduced to parol. *Ashley* v. *Vischer,* 24 Cal., 322 (85

Am. Dec., 65). Such a contract is found in the passbook of a depositor in a bank. The entries in the book are not express promises to pay, but the law implies such promises, and the liability thereunder has been held not to be barred in five years. *Jassoy* v. *Horn,* 64 Ill., 379." It is clear here that there was no express promise on Ames' part to pay, but a state of facts was acknowledged in writing to exist, which imported the obligation; but, although the law implied the obligation, the contract was held to be a contract in writing with respect to the statute of limitations applicable. This case covers our case perfectly. There is no express promise on the part of the grantee to pay four hundred dollars, but there is a statement of facts—to wit, that the land was sold for the consideration of four hundred dollars—which statement of facts is acknowledged in writing, and from which statement of facts the law imports the obligation to pay. In such case—the contract terms being thus acknowledged in writing—the statute of limitations applicable to a written promise applies. As stated by Cooper, C. J., in *Washington* v. *Soria,* *supra*: "In either event the promise of the defendant, whether it be express or implied, is to perform a contract, the terms of which are written, and not unwritten. The promise to pay is implied by law, but it is a promise to perform a written, and not an unwritten, contract." We do not see how words could more clearly express the principle on which we rest our views of this case. The terms of the contract which is to be performed are in writing, acknowledged by the grantee by his acceptance of the deed and in going into possession thereunder. The promise to pay the four hundred dollars is implied by law, but it is the promise to perform the written contract—to wit, that he should pay four hundred dollars for the land conveyed. It is true that in the *Washington* v. *Soria* case, *supru,* the deed recited that the grantee was to pay in installments, but there is no difference, in effect, between the recitation in a deed poll that the grantee will pay a certain sum in installments, he making no written notes to pay, but entering into possession under the deed,

and the recital that the grantor in a deed poll has sold and con-
veyed to the grantee a tract of land for four hundred dollars.
There is no written note in either case, but the terms of the con-
tract in one, just as clearly as in the other, import an obligation
to pay, and import it in writing. The recital in this deed that
the grantor has sold and conveyed this tract of land to the
grantee for four hundred dollars is, in substance and effect, the
perfect equivalent of a recital that the grantor had sold and
conveyed the grantee this tract of land, for which the grantee
was to pay the grantor four hundred dollars. In either case the
obligation to pay is in writing, and § 2737, Code 1892, applies.
The same principle exactly is involved in those cases in which
the consideration for a conveyance is an assumption of a
mortgage debt. Of that sort of case the court says in *Atlantic
Dock Co.* v. *Leavitt, supra*: "In *Belmont* v. *Coman,* 22 N. Y.,
438 (78 Am. Dec., 213), Judge Comstock says: 'It needs no
authority to prove that if, in the conveyance, there are words
importing that the grantee will pay the debt, he is deemed to
have entered into an express undertaking to do so, although he
does not sign or seal the instrument. The acceptance of a deed
containing such language is evidence of the most satisfactory
kind that he has promised to do what the deed says he is to do.' "
In *Trotter* v. *Hughes, supra,* the recital was this: "And in con-
sideration thereof, John A. Hughes agrees to buy the brick
house and two lots of ground, corner of Division and Sycamore
streets, for fourteen hundred dollars, the mortgage on it. After-
wards a deed was executed in pursuance of the agreement, from
which this recital is quoted, by Trotter, the other party to the
agreement, to Hughes, which conveyed the two lots mentioned
in the contract, and then recites: "Subject, nevertheless, to a
certain indenture of mortgage made by Jonathan Trotter and
wife, bearing date the 3rd of August, 1837, to Gertrude A.
Stryker, to secure the payment of the sum of fourteen hundred
dollars and interest, which mortgage forms the consideration
money in this deed." It was held that this recital, "which mort-

gage forms the consideration money in this deed," was a suffi-
cient statement of the terms of the contract to make the statute of
limitations appropriate to written promises the only one ap-
plicable. It seems to us that the recital in this deed and the re-
cital in the one before us are practically identical. We are,
therefore, of the opinion that the court below erred in holding
the action barred.

*Reversed and remanded.*

TRULY, J., delivered the following dissenting opinion:

In order to arrive at the conclusion reached by the majority
of the court, it is necessary (1) to admit parol proof to alter
and change the terms and conditions of a written contract,
though there is neither allegation nor proof of fraud or mis-
take on the part of either contracting party; (2) having over-
thrown the recital of payment in the written contract, to add to
the promise to pay, which is implied by law to exist between
vendor and vendee, a prime lien, which is not retained by the
instrument, and which has been expressly relinquished by the
contract between the parties; (3) having rejected the written
contract mutually entered into, to insert in the writing another,
and thereby avoid the statute of limitations governing actions
founded on unwritten contracts. I cannot join in this system
of judicial conveyancing, by which a warranty deed solemnly
reciting the payment of all purchase money is converted into a
conveyance which reserves to the vendor a lien for the sum
stated as having been paid. *Baker* v. *Fleming* (Ariz.), 59
Pac., 101; *Ahrend* v. *Odiorne,* 118 Mass., 261 (19 Am. Rep.,
449). It is probably true that when the terms of a deed, as to
the purchase money, show that it is unpaid, in whole or in part,
or are ambiguous and indefinite, and notes or other written evi-
dence of nonpayment be taken, the vendor may, if not estopped
by waiver or conduct, assert a lien on the land so long as it re-
mains the property of the vendee or his privies, or of subse-
quent vendees with notice; but I doubt the soundness of the

reasoning which permits the specific, definite recitals of a solemn deed to be ignored and held for naught, and another and different contract manufactured purely by parol testimony. While it is true the doctrine announced by the majority of the court on this particular point is recognized in many jurisdictions, I believe the contrary view to be supported by the sounder reasoning, and more in accord with the principles of equity and justice, and I prefer to align myself with the numerous authorities so holding. 3 Pom. Eq. Juris., secs. 1250, 1251; *Smith* v. *Allen* (Wash.), 50 Pac., 783 (39 L. R. A., 82; 63 Am. St. Rep., 864). I concede that under certain circumstances a receipt can be disproved and overthrown, but, this accomplished, the creditor has nothing more than the right to proceed against his debtor, and secure a personal judgment for the sum due. The opinion of the court states: "The recital in this deed that the grantor had sold and conveyed this tract of land to the grantee for four hundred dollars is, in substance and effect, the perfect equivalent of a recital that the grantor had sold and conveyed the grantee this tract of land, for which the grantee was to pay the grantor four hundred dollars." If this statement be good law, it is useless and idle to take a deed reciting that the purchase money has been paid. How a recital that a deed is in consideration of four hundred dollars "to him paid by the said party of the second part, receipt whereof is hereby acknowledged," can be construed as "the perfect equivalent of a recital that the grantor had sold the grantee this tract of land, for which the grantee was to pay the grantor four hundred dollars," passes my comprehension. If this statement be sound or accurate, the acceptance of a receipt for money paid for property is "the perfect equivalent" of a written promise to pay the purchase money. A novel proposition, surely.

Again, assuming that an indebtedness was due, and could rightfully have been asserted in the proceeding in the instant case, in my judgment, the same was barred in three years, under § 2739, Code 1892. That section recites, "Actions on any un-

written contract, expressed or implied, shall be commenced in three years," etc. The theory on which this suit is sought to be upheld is that the grantee, by accepting the land, established an implied contract to pay for it, which was breached by non-payment, and a cause of action thereupon immediately accrued to the grantor. This contract can only grow out of the relation of the parties as vendor and vendee. The contract, if it exists at all, arises, not out of any writing which is simply declaratory of the existence of the relation of vendor and vendee, but by implication of law by reason of such relation. *I. C. R. R.* v. *Miller,* 32 Ill. App., 267; *Knight* v. *St. L., I. M. & S. Ry. Co.* (Ill.), 30 N. E., 544; *Pennsylvania Co.* v. *C., M. & St. P. Ry. Co.* (Ill.), 33 N. E., 416.

A contract in writing is one in which all necessary terms and conditions must be definitely and expressly stated. The final agreement of the parties must so distinctly appear as to render resort to parol testimony, or to the duties implied by law from the relation of the parties, or from the facts stated, unnecessary, in order to ascertain and determine the scope and extent of the understanding between the parties. The promise to pay, the amount to be paid, the date of payment, must all be set out in and by the instrument itself. This, in my judgment, is elementary. The writing here under consideration contains no expressed promise to pay, no statement of any sum remaining unpaid, and, perforce, no date of payment. These requisites of a formal, valid written contract are supplied by parol and supported by an implication of law. "If it be true that the agreement as set forth in the writing is so indefinite as to necessitate resort to parol testimony to make it complete, the law is that, in applying the statute of limitations, it must be treated as an oral contract." *Plumb* v. *Campbell* (Ill.), 18 N. E., 790. Assuming that such a thing can exist as an "implied written contract," it cannot be successfully contended that a writing which positively states that nothing is due can be distorted into a promise to pay a sum which it asserts has already been paid.

Therefore, I contend that, if the grantee was liable at all, it was upon an "implied unwritten contract," and the chancellor was correct in so holding.  *Love* v. *Atkinson* (N. C.), 42 S. E., 966.

The views herein expressed are not antagonistic to the conclusion of the court in *Washington* v. *Soria,* 73 Miss., 665 (19 South., 485; 55 Am. St. Rep., 555), where the amount due, the date of payment, and all other necessary terms of a written contract, were evidenced by the terms of the deed under review, but I disapprove of any extension of the principle announced therein.  The other cases cited in the opinion in chief proceed mainly upon the principle, sound and universally recognized, that the vendee's acceptance of the deed is such an assent to all its stipulations as will estop him from making a denial.  That principle has no application to the case at bar.  This is an effort, not to enforce the stipulations of the deed, but to insert other and different provisions.  In my judgment, the conclusion of the court practically nullifies and defeats the object of our laws requiring all contracts in reference to land to be in writing, acknowledged, and recorded.  It opens the way to successful fraud, by permitting the vendee of land, holding under an absolute warranty deed, to trade on the strength of that record title, and then, if his land is taken by his creditors under execution, allow him and his vendor, by parol testimony, to establish a lien paramount to the title thus acquired by the purchaser at such sale.  It renders insecure the title by which many homes in the state are held, by affording an opportunity, which was taken advantage of in the instant case, after the death of the grantee, for the prospective heirs of the grantor and others directly interested to prove by parol testimony a verbal lien in direct contradiction of the terms of the deed.  Nor will lapse of time avail to perfect such title, for, if both debt and lien can be established by parol, manifestly the date of the maturity of the debt—the time when the "cause of action shall have first accrued"—can be likewise so established.  Instances might readi-

---

---

ly be multiplied, but I content myself by merely suggesting some of the perils and pitfalls which beset the path which the court is now traveling.

*I disagree with the conclusion of the court, and dissent from the reasoning upon which the decision is based.*