[No. 12774.  Department One.  June 1, 1916.]

SOPHIE IHRKE, *Appellant*, v. CONTINENTAL LIFE INSURANCE
& INVESTMENT COMPANY, *Respondent*, F. L. SHERWOOD
*et al., Defendants.*[1]

VENDOR AND PURCHASER—CONTRACTS—BREACH—REMEDIES OF VEN-
DEE—LIEN FOR MONEY PAID.  Where the completion of an executory
contract for the sale of land is prevented by the default or wrongful
act of the vendors, who have put it beyond their power to convey,
the vendee is entitled to a lien upon the land for the amount paid
on the purchase price, as against the vendors and subsequent pur-
chasers with notice.

SAME.  The right to such a lien is not affected by the fact that,
in this state, there is no vendor's lien upon the lands for unpaid
purchase money.

SAME.  The refusal of a vendee to make further payments on an
executory contract for land, after the vendors prevented completion
of the contract by putting it out of their power to convey, and the
commencement of a suit for rescission and damages, does not con-
stitute such a rescission of the contract as to prevent the vendee
from claiming a lien on the land for the amounts paid on the pur-
chase price.

SAME—CONTRACT—MUTUAL COVENANTS—BREACH—RESCISSION.  An
agreement in an executory contract for land to convey a bearing
orchard, to be planted and matured by the vendors prior to the pay-
ment of the last installment of the purchase price, is not an inde-
pendent covenant, but the covenants were mutual and dependent,
without separation in regard to the consideration, and breach of such
clause is ground for rescission.

SAME—REMEDIES OF VENDEE—RESCISSION—WAIVER.  The refusal
of a vendee to make further payments on an executory contract for
land, after the vendors prevented completion of the contract by put-
ting it out of their power to convey, is not a default by the vendee
which would forfeit the right to relief.

LIMITATION OF ACTIONS—IMPLIED LIABILITY ON WRITTEN CONTRACT.
Semble, that an action by a vendee in an executory contract for
land, for a rescission, and the recovery of purchase money paid and
to have the amount declared a lien on the land, on account of the
fraudulent representations of the vendors and breach of covenants,
and their default and wrongful acts in preventing performance by

[1]Reported in 157 Pac. 866.

putting it out of their power to convey, is an action upon an implied liability arising out of a written agreement, the limitation of which is six years.

SAME—PLEADING—DEMURRER. A complaint must show on its face that the action is barred, to be subject to demurrer upon the ground that the action is not commenced within the time limited by law.

VENDOR AND PURCHASER—REMEDIES OF VENDEE—RESCISSION—RECOVERY OF MONEY PAID—WAIVER. The giving of a mortgage by the vendors does not give the vendee the right to rescind an executory contract for the sale of lands; hence delay until foreclosure started does not amount to laches waiving the right of rescission and recovery of money paid.

SAME. The vendee's right to rescind an executory contract for the sale of land and recover money paid is not waived by failing to litigate the same in an action brought to foreclose a mortgage wrongfully placed on the lands by the vendors; since paramount title may not be litigated in a mortgage foreclosure.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered November 12, 1914, upon sustaining a demurrer to the complaint, dismissing an action for equitable relief, tried to the court. Reversed.

*Geo. W. Belt*, for appellant.

*Luby, Pearson & Dillard*, for respondent.

FULLERTON, J.—This is an appeal from a judgment of dismissal with costs, entered in the action after a demurrer had been sustained to the complaint and the plaintiff had elected to stand on her pleadings. The ultimate question presented for decision therefore is, Does the complaint state facts sufficient to constitute a cause of action?

In the complaint it is alleged: That in the year 1908, the defendants F. L. Sherwood and Nannie S. Sherwood, being then the owners of a certain tract of land situated in Spokane county, caused a part of the same to be platted into ten-acre tracts, recording the plat in the office of the auditor of that county; that, after platting the lands as stated, the defendants named, using the name of Sherwood Immigration Company, undertook the sale of the tracts, and to induce

plaintiff and others to purchase the same, caused to be published and circulated circulars or folders containing, among other things, the following statements: "We plant choice branches of fruit trees of your own selection; an expert will prune, spray, cultivate and care for them for you in every way for four years free, replacing any trees that should die, turning over to you a bearing orchard which will pay you a yearly profit of from $300 to $500 per acre, and the land will have increased in value to three or four times its original cost. All this included in the first cost." That the plaintiff read such statements and representations, and being desirous of obtaining and owning a bearing orchard, and believing and relying upon the representation so made as aforesaid, did, on December 29, 1908, enter into a written contract with the Sherwoods for the purchase of the south half of one of the platted tracts, containing 5.68 acres, agreeing to pay therefor the sum of $1,900 in the following manner: $100 cash on the execution of the contract, and the balance in monthly installments of $11 each; the Sherwoods, by the terms of the contract, agreeing to plant the tract so purchased to fruit trees, cultivate and care for the same for a period of four years, replace all that should die during the period at the proper season, and convey the title to the plaintiff by a good and sufficient conveyance when the last of the installment payments should be made.

It is further alleged that, on April 19, 1911, F. L. and Nannie S. Sherwood conveyed the property, with other lands, to the defendant F. B. Rutherford, which conveyance by its express terms provided and stipulated that Rutherford assumed the obligations of Sherwood and wife in the contract made by them with the plaintiff, and agreed to carry out its conditions on their part to be performed; that, by mesne conveyances, Rutherford and wife conveyed an interest therein to one D. A. Morrison; and that, on December 15, 1911, Rutherford and wife and Morrison, being then the owners of the legal title to the property, mortgaged the same, with other

lands, to the defendant Continental Life Insurance & Investment Company, to secure the sum of $10,000; that, on January 20, 1913, the defendant last named commenced an action to foreclose its mortgage and sell the tract in satisfaction of the amount due upon the mortgage, claiming and alleging that the plaintiff's contract was subject and inferior thereto, but that the plaintiff appeared in such action and contested the allegation, and that the court decided that the defendant took its mortgage with full knowledge of the contract.

It is further alleged, that the Sherwoods planted the tract to fruit trees in the spring of 1909 and cared for them for about two years, but thereafter the tract and trees were wholly neglected, the trees not being sprayed, pruned or cared for or the land cultivated as agreed in the contract, so that a large number of the trees died and the remainder were so stunted in growth as to be of little if any value, and that no amount of cultivation in the future can overcome or repair the injury occasioned by the neglect; that plaintiff did not discover until about four or five months after the tract had been conveyed to Rutherford that the trees were being neglected, but that on discovering the fact she called the attention of the Sherwoods and the attention of Rutherford to the fact, and notified them that, unless the contract with reference to the trees was carried out, she would not make any further payments on the contract, but would rescind the same, whereupon the Sherwoods and Rutherford promised and agreed with the plaintiff that if she would continue the payments they would at once replace the dead trees, and otherwise place the land and the trees thereon in a first-class condition, and if necessary so to do would plant an entirely new orchard thereon; and that the plaintiff, relying on the promises, continued to make payments in accordance with the contract until the commencement of the foreclosure action before mentioned, at which time she ceased, fearing that all of her interests in the property would be lost by such proceedings;

and that the foreclosure action was concluded only a few days before she commenced the present action.

It is further alleged that neither the Sherwoods nor Rutherford kept the promises made by them to the plaintiff with reference to replanting and caring for the tract and orchard, but suffered the same to remain in the condition they were at the time the promises were made; that the plaintiff did not take possession of the tract, and made the subsequent payments on the contract in the belief that the promises had been kept, a fact she did not know until after the foreclosure action had been commenced.

It is further alleged:

"That the representations and statements contained in said folder, or circular, hereto attached, as to the kind and quantity of fruits which tract had and would produce and the profits which had and would be realized therefrom, were false and misleading and known to be such by said Immigration Company at the time they were made; that as plaintiff is informed and believes and alleges the fact to be, the net profits possible to be realized on said land from any kind of crop or use are little or nothing, and uncertain; that at and before entering into said contract said Sherwood represented and stated to plaintiff that said land was worth at that time $1,900 but plaintiff alleges upon information and belief that said tract was not then and is not now of more value than $100 per acre; that plaintiff is a widow and has no one to advise and counsel with concerning matters of business and has no knowledge of or experience in business matters and she relied explicitly upon the representations made to her as above alleged; that plaintiff is a woman of small means with no knowledge of fruit growing or the proper method of planting, cultivating or caring for fruit trees, and plaintiff was induced to enter into said contract of purchase by the said representations and promises made to her that at the end of four years she would have a bearing orchard which would furnish her a living, and but for such representations she would not have entered into said contract; that said defendants, other than said Insurance Company, and said persons through whom title to said tract passed, are all insolvent and unable to respond in damages in any amount whatever, and

said F. B. and D. H. Rutherford are residents of Oregon and are not now within the state of Washington and plaintiff has no adequate remedy, except by rescission of said contract, which she elects to do and to pray for a recovery of the money paid on the purchase price of said contract and that the amount thereof be made a lien on the south half of said tract four."

The prayer of the complaint is for a judgment and decree rescinding the contract, decreeing the amount paid thereon to be a lien on the land, ordering a sale of the property to satisfy the lien, and for general equitable relief.

The defendant Continental Life Insurance & Investment Company alone appeared. The demurrer which it interposed and which the trial court sustained was based upon two grounds: (1) that the complaint does not state facts sufficient to constitute a cause of action; and (2) that the action was not commenced within the time limited by law. The reasons which moved the court to sustain the demurrer do not appear on the face of the record, nor does it appear upon which of the grounds stated the ruling was rested. The respondent's learned counsel have, however, made a well ordered statement in their brief of the questions involved, and in this order we shall notice them.

The first contention is that the plaintiff, in order to have a cause of action against the defendant, who is respondent on this appeal, must have a lien of some sort upon the property contracted to be purchased, and that, under the laws of this state, no such lien arises from a mere executory contract to purchase real property, even though a part of the purchase price may be paid and though the vendee may be excused, because of the acts of the vendor, from paying the remainder. The case cited from this court and principally relied upon to maintain the principle is *Tieton Hotel Co. v. Manheim,* 75 Wash. 641, 135 Pac. 658. In that case one Lee contracted to sell to Manheim certain lots in the city of North Yakima for a consideration of seven thousand five hundred dollars, five hundred dollars to be paid in cash and the remainder on or

before a subsequent date named in the contract. Manheim was a married man at the time, and subsequent thereto his wife died, leaving six children, four of whom were adults and two of whom were minors. Manheim was unable to comply with his contract, and notice of forfeiture was served upon him. Later on he made a written acknowledgment of for-feiture, reciting therein that "said contract is at an end, and that all rights thereunder have been forfeited." The action was brought against the heirs of Mrs. Manheim by a subsequent purchaser from Lee to quiet the title as against the heirs of Mrs. Manheim. Judgment went in favor of the purchaser in the court below, and on the appeal the judgment was affirmed. In the course of the opinion this language was used:

"It is, therefore, plain from our previous holdings upon contracts of this character that, until the contract was performed, no title, either legal or equitable, passed from the vendor to the community; and that, upon the failure of the Manheims to comply with the terms of the contract, no interest whatever in the property was vested in the Manheims, or in any one claiming through them.

"Conceding that whatever interest William Manheim acquired in the contract, or the sale to which it referred, was a community interest, that interest necessarily depended upon the fulfillment of the contract. William Manheim was the agent of the community, and was authorized under the statute to have the management and control of the community property. Rem. & Bal. Code, §§ 5917, 5918 (P. C. 95 §§ 27, 29). And until the interest which he acquired at that time became an absolute interest, and vested some sort of title in the community, the community had no greater interest than William Manheim himself. It is plain, we think, that William Manheim, having acknowledged that the contract was at an end, and that all rights thereunder had been forfeited, is in no position to claim any interest in the contract, or in the real estate to which it referred. And therefore it seems plain that, this claim being made through him, the community has no interest. For whatever interest the community acquired, it acquired through the act of William Manheim. The interest of the community was incipient, and until it ripened into a com-

pleted interest, the community acquired nothing. It seems too plain for argument that, if Mrs. Manheim had survived the period of the contract, and William Manheim, during her lifetime, had made the acknowledgment which he did make, she would have been bound thereby; and that the contract as to both William Manheim and his wife would have been entirely avoided. The same rule must follow as to those claiming through Mrs. Manheim. We think it is plain, both upon reason and the rule of this court, that the heirs of Mrs. Manheim have no rights under the contract."

It seems to us manifest from this language that the court did not mean to hold that the vendee in the contract of purchase acquired no interest in the property, but rather that he acquired no interest which could not be forfeited in a failure on his part to perform the conditions of the contract. Such, also, is the effect of the decisions to which the court referred. At least none of them hold, either directly or by necessary implication, that one who has entered into an executory contract for the purchase of land, and has paid a part of the purchase price, has no lien on the land for the amount paid, where a completion of the contract is prevented by the default or wrongful act of the vendor.

While our attention has been called to no case from our own decisions where the precise question has been presented, we have cases we think that are analogous in principle. We have held that, where money for the purchase price of land, or some part of the purchase price, is furnished by one person and the deed to the property is taken in the name of another, that other becomes the trustee of the first person to the extent of such first person's interest in the purchase price. *O'Donnell v. McCool*, 89 Wash. 537, 154 Pac. 1090, and cases there cited. The principle involved in these cases is not different from the principle involved in the case at bar. In the cases cited, the trust arises in favor of the person furnishing the purchase price, because in justice and equity the property is his, in other words, it was bought with his money. In the case at bar, the plaintiff contracted to purchase the

tract of land in question. She paid, at the time of the execution of the contract, a part of the purchase price, and since that time a large sum on the remaining part. Her vendor, through his own default and wrong, has put it beyond his power to convey the property agreed to be conveyed, even though she pays the remainder of the purchase price. It seems to us that, on the plainest principles of equity, she should have a lien on the property for the amount she had paid, as against the vendor and as against any one purchasing from him with notice of the contract.

The proposition is not without authority. Such a lien was recognized in *Wickman v. Robinson*, 14 Wis. 535; *Bullitt v. Eastern Kentucky Land Co.*, 99 Ky. 324, and *Stewart v. Wood*, 63 Mo. 252. Mr. Jones, in his work on liens, also lays down the rule that "money paid by a vendee of land prematurely, or before receiving a conveyance, is a charge upon the estate in the hands of the vendor, or in the hands of his grantee with notice."

The respondent argues, however, that the lien is the corollary of a vendor's lien and exists only in those jurisdictions where a vendor's lien is recognized, and that this court has heretofore held that a vendor's lien does not exist in this state. In *Smith v. Allen*, 18 Wash. 1, 50 Pac. 783, 63 Am. St. 864, 39 L. R. A. 82, it was held that real estate conveyed by an absolute deed is not subject to a vendor's lien for the unpaid part of the purchase price, because inconsistent with our recording acts. But it was pointed out that the reason for the maintenance of the lien was gone, since a judgment obtained for the purchase money immediately became a lien upon the property under which it could be sold, and that, too, freed from any homestead or other claim of exemption. It is obvious that the reasoning of the case does not apply to the case at bar. Here, in allowing the lien, the recording acts are not violated and no innocent purchaser can suffer because of its enforcement.

Again, it is urged that there can be no lien in the present case under the authority of *Ankeny v. Clark*, 1 Wash. 549, 20 Pac. 583, and *Jones v. Grove*, 76 Wash. 19, 135 Pac. 488, since it was held in these cases that where a contract has been rescinded it is at an end and no rights exist under it.   The contention assumes that, in the present case, there has been a rescission of the contract of purchase.   But this is not the fact.   On the contrary, the very suit is founded on the assumption of an existing contract and a breach thereof, which will result in a loss to the plaintiff if the relief she seeks is not granted.   A rescission in the sense that each of the parties will be relieved from the obligations of the contract may be a part of the final decree, but it is plain that no rescission has as yet taken place.

The second contention is that the clause in the contract relating to the planting of the fruit trees is an independent covenant, a breach of which is not ground for a rescission of the contract.   In support of the contention, the cases of *Crampton v. McLaughlin Realty Co.*, 51 Wash. 525, 99 Pac. 586, 21 L. R. A. (N. S.) 823; *Spokane Canal Co. v. Coffman*, 54 Wash. 645, 103 Pac. 1106, and *Benham v. Columbia Canal Co.*, 74 Wash. 110, 132 Pac. 884, are cited.   While in each of these cases the covenants were held to be independent, it can be conceded that they were rightly decided without requiring the holding that the covenants in the present case are so.   In the first case, the covenant was in regard to building restrictions and the making of street improvements, and in the others it related to water rights.   The reason given for the holdings was that there was no connection in the matter of the promises, that they were to be performed at different times, and went only to separate parts of the consideration.   Here the covenants are mutual and dependent.   The very contract is to convey a tract of land with a bearing orchard, which was to be planted and matured prior to the time the last of the payments were due.   There was no sepa-

ration in regard to the consideration. The land with the orchard was to be conveyed as a whole for the one price, and there is no means of determining what part of the consideration was to be paid for the land and what part for the orchard. The general rule is well stated in 7 R. C. L. 1089, in the following language:

"It is a general rule that where covenants are made by two parties to a deed or agreement and are such that the thing covenanted or promised to be done on each part enters into the whole consideration for the covenant of promise on the other part, or where the acts or covenants of the parties are concurrent, and to be done or performed at the same time, the covenants are dependent, and neither party can maintain an action against the other, without averring and proving performance on his part. Hence it is that covenants for conveyance of the premises and for the payment of the consideration, in a contract for the sale of lands, are regarded as dependent covenants, as are also covenants by a lessee to pay rent, and by a lessor to make improvements and repairs, without which the premises would be useless for the purposes leased. Covenants are construed to be either dependent on or independent of each other, according to the intention and meaning of the parties and the good sense of the case; and technical words should give way to such intention. But the courts will construe covenants to be dependent unless the contrary intention appears."

In the case before us, if the allegations of the complaint be true, there can be no question, we think, other than that the parties regarded these covenants as dependent.

It is next contended that a vendee cannot maintain an action for a rescission while in default. Stated as a general proposition, this is true. But here the plaintiff was not legally in default. She continued her payments not only until it became apparent that the vendor did not intend to perform, but until he had placed himself in a position where he could not perform. The plaintiff, therefore, had a lawful excuse for refusing to pay further, and she could cease payments with-

out forfeiting her right to such relief as the facts then warranted.

The fourth contention is that the action is barred by the statute of limitations. The defendant construes the action to be either one for relief on the ground of fraud, which must be commenced within three years after the fraud is discovered; or one for relief for a cause referred to in § 165 of Rem. & Bal. Code (P. C. 81 § 75), in which case the action must be commenced within two years from the time it accrued. · It seems to us, however, that the action is one upon an implied liability arising out of a written agreement, the limitation of which is six years, rather than an action of the character to which the defendant would relegate it. But be this as it may, we are clear that the complaint does not show on the face that it is barred on either theory, and the objection, to be available on demurrer, must appear on the face of the complaint.

Finally, it is said that the right to rescind, if it ever existed, has been waived by the plaintiff. If we have correctly gathered the respondent's contentions upon this branch of the argument, they are that the respondent was guilty of laches in not commencing her action prior to the time the respondent foreclosed its mortgage, or that she should have litigated her rights in that proceeding. But whatever the fact may actually be, the complaint does not show her derelict in this respect. The fact that her vendor mortgaged the premises after entering into the contract to convey them to her would give her no right of action or right to rescind. He might be able to perform despite the fact. Nor is it to be presumed that she had the right to litigate her present claims in the mortgage foreclosure action. The rule, under our previous holdings to the effect that the question of paramount title cannot be tried in such a proceeding, would seemingly be the other way.

Our conclusion is that the court erred in sustaining the demurrer to the complaint. The judgment is therefore re-

versed, and the cause remanded with instruction to overrule the demurrer and permit the defendant to answer to the merits.

MORRIS, C. J., MOUNT, CHADWICK, and ELLIS, JJ., concur.