[Civil No. 2587.  Filed July 11, 1927.]

[258 Pac. 304.]

PIMA FARMS COMPANY, a Corporation, Appellant, v. VERNON ELLIOTT, Appellee.

Messrs. Kingan & Darnell, for Appellant.

Mr. George O. Hilzinger, Mr. Edwin F. Jones and Messrs. Curley & Pattee, for Appellees.

ROSS, C. J.—The facts in this case are identical with the facts in the Fowler case, *ante,* page 331, 258 Pac. 256, except, that, when Post failed to have water ready for delivery for the season of 1920, Elliott elected, pursuant to its terms, to terminate the contract, and accordingly, in January, 1921, made a written demand upon the receiver for the return of the advanced payment of $475.80 on the purchase price, and also payment for the value of improvements placed upon the premises by him. The question is Elliott's right to have a lien declared against the land in his favor for these two items. The liens were allowed by the judgment of the lower court, and plaintiff appeals.

Practically all the courts, English and American, are in accord in holding the vendee of realty is entitled to an implied lien for advances made on the purchase price, if through the fault of the vendor the sale is not finally consummated. The vendee's

lien, both by the text-writers and the decisions, is treated as a counterpart of the vendor's lien, the reason for the existence of one being considered correlative of the other. While in *Baker* v. *Fleming,* 6 Ariz. 418, 2 Ann. Cas. 370, 59 Pac. 101, in a very well-reasoned opinion, written by Mr. Justice DAVIS, it was held that no vendor's lien would attach to property 'conveyed by deed absolute, because the doctrine of implied vendor's liens was "repugnant to our registration law, ill-suited to our condition, and by no means essential to the interests of justice," the right to a vendee's implied lien has not been before this court.

In *Ihrke* v. *Continental Life Ins. Co.,* 91 Wash. 342, L. R. A. 1916F 430, 157 Pac. 866, the vendee's lien was upheld, although the vendor's lien had been theretofore, in *Smith* v. *Allen,* 18 Wash. 1, 63 Am. St. Rep. 864, 39 L. R. A. 82, 50 Pac. 783, rejected "because inconsistent with our recording acts." In the Ihrke case the court held that "in allowing the (vendee's) lien, the recording acts are not violated and no innocent purchaser can suffer because of its enforcement."

The vendor's lien originated in the English courts of chancery, and the reason assigned by the chancellors for allowing it was "the inability to subject land by process of law to execution for a simple contract debt."

Because under our laws a vendor may secure the purchase price by express reservation of a lien, or by retaining title in himself until land is paid for, or by taking back from the purchaser a mortgage, or if he has accepted the purchaser's personal obligation, and conveyed title to him, may sue and attach the property as security or reduce his claim to a lien judgment, the reason for allowing an implied vendor's lien does not exist here; and it was because of the amplitude of means available to a vendor

under our laws that the vendor's lien was denied in *Baker* v. *Fleming, supra.*

However, the vendee's rights are not so well protected. In an executory contract for purchase of land the vendor, and not the vendee, usually dictates the terms of the sale, and we can think of no way in which the vendee could protect himself against a defaulting vendor, unless he be given a lien for any advances that he may have made under the contract, and we therefore agree with the Ihrke case that the allowance of a vendee's lien does not violate our registration laws, and will not cause any innocent purchaser to suffer by reason of its enforcement. While several courts, like ours, have held, because of the registration laws and other local conditions, no vendor's lien exists for unpaid purchase price, and a few states have by legislative act abolished vendors' liens, we have not been able to find any case in which a vendee's lien has not been enforced where the facts brought it within the rule stated below, which is as follows:

"The rule which has obtained for many years in this country and in England is that the purchaser of land by an executory contract, where the contract fails by reason of vendor's default, and without any fault of the purchaser, is entitled to a lien upon the land for the repayment of what he has paid under the contract. If the contract fails, or is avoided, because of the inability or refusal of the vendor to make a marketable title, or title free from incumbrances, or because of fraud or misrepresentation in the contract, or for any other reason which is chargeable to the vendor, and which is not due to default on the part of the purchaser, the latter is given a lien upon the land as security for the repayment of what he has paid in performance of the contract. So, too, the lien may attach where the contract has been mutually rescinded, or rescinded by the vendor, or by the purchaser under his right to do so." 39 Cyc. 2031.

There is a great diversity of opinion among the elementary writers and the courts as to the origin, nature and effect of the vendee's lien. The truth is the chancery courts, being confronted with a situation growing out of contract, but not provided for therein, and being satisfied that great injustice would result if they did not devise some rule to protect the innocent party, rather dogmatically resorted to the idea of granting protection by means of a lien on the property for advances made on the purchase price; and the rule thus devised has been variously described as founded on "natural equity, imputed intention, partial ownership, the implication of a trust, or a blending of some of these sources." Whether the rule is founded upon one of these sources, or is contributed to by two or more, or all, it seems to us unimportant; the fact being that such rule was necessary to prevent the vendor from overreaching the vendee, who in good faith had paid his money on the agreed purchase price, and who, in the absence of the rule would be forced to enrich the party through whose fault or wrong the situation was created.

One of the earliest English cases bases the rule on partial ownership and the trust relation. *Rose* v. *Watson,* 10 H. L. Cas. 672. It was there said:

"There can be no doubt, I apprehend, that when a purchaser has paid his purchase money, though he has got no conveyance, the vendor becomes a trustee for him of the legal estate, and he is in equity considered as the owner of the estate. When, instead of paying the whole of his purchase money, he pays a part of it, it would seem to follow as a necessary corollary that, to the extent to which he has paid his purchase money, to that extent the vendor is a trustee for him; in other words, that he acquires a lien exactly in the same way as if upon the payment of part of the purchase money the vendor had executed a mortgage to him of the estate to that extent."

While the theory of ownership in the vendee in the proportion his payments bear to the agreed purchase price is that he is an equitable owner of such portion, when the occasion arises for the lien, it attaches to the whole property or estate. The lien comes into existence when the vendor defaults in the performance of his part of the contract and the vendee is without fault. 3 Pomeroy's Equity Jurisprudence (3d ed.), § 1263; *Elterman* v. *Hyman,* 192 N. Y. 113, 127 Am. St. Rep. 862, 15 Ann. Cas. 819, 84 N. E. 937.

In this case the vendor Post had agreed, if he failed to have water ready for delivery within six months after the date of contract, to repay all advances made by the defendant. The facts are that he did not have water ready for delivery as agreed, but, since the provision for repayment was for the benefit of the vendee, the default should be reckoned from the date vendee elected to terminate the contract by demanding of vendor such repayment, which was in January, 1921. This date becomes important, because the plaintiff claims that, even though defendant be entitled to a lien, it was barred by the statute of limitation when he filed his cross-complaint on October 19th, 1925, claiming it. It will be seen that it was over four years, and less than six years, from the date of demand and the filing of cross-complaint.

We have two provisions as to limitations of actions, and it depends upon which one applies to the facts of this case as to whether or not the action was barred at the time of filing of cross-complaint. These two provisions are contained in paragraph 714, as amended by section 2, chapter 76, Session Laws of 1917, and paragraph 716 of the Civil Code 1913, reading as follows:

"714. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writ-

ing, executed within this state, shall be commenced and prosecuted within six years after the cause of action shall have accrued and not afterward."

"716. Every action other than for the recovery of real estate for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward."

If 716 applies, the action is barred; otherwise the controlling statute is 714.

While the courts will not refuse to give effect to statutes limiting the time within which an action may be brought when there is no doubt of the legislative intent, it would seem, if the limitation claimed is of doubtful application, the claim should not be allowed. The payments made by defendant were made under the written contract, and in pursuance thereof. The debt sued for therefore grew out of the contract, and in a sense is founded thereon. The payments would not have been made except for the written contract and the promise therein to make them. Not only that, but the vendor expressly bound himself in the contract to repay advances. Nor do we think the character of the debt sought to be collected is changed from one evidenced by or founded upon a written contract simply because it has taken the form of a claim of lien, or because the creditor seeks to collect in the only available way.

We are of the opinion that the debt sued for falls within the kind described in paragraph 714, and was not barred at the time of filing the cross-complaint.

The contract did not require the defendant to make any improvements on the land, and therefore the debt for their value was not evidenced by, or founded upon, a contract in writing, and is governed by the four-year limitation provided in paragraph 716—even if it be granted the vendee was entitled to a lien therefor, which question we do not decide.

The judgment in favor of defendant Elliott is modified by striking therefrom the $25 allowed for improvements, and, as thus modified, is affirmed.

LOCKWOOD and McALISTER, JJ., concur.