[Civil No. 1746.  Filed March 22, 1920.]

[188 Pac. 131.]

FREDERICK S. STEPHEN and QUEEN CREEK COPPER COMPANY, a Corporation, Appellants, v. EARL P. PATTERSON, Administrator of the Estate of R. L. CHAMLEE, Deceased, Appellee.

1. MINES AND MINERALS—INSTRUMENT PROVIDING FOR SPECIAL LIEN CREATED EQUITABLE MORTGAGE.—An instrument containing an agreement to pay money when certain mining claims and mill sites were sold out of the first money received from the sale, and providing that a special lien was thereby created on the property to secure the payment of the obligation, created an equitable mortgage.

2. MORTGAGES—EQUITY WILL ESTABLISH MORTGAGE OR LIEN INTENDED AS SECURITY FOR DEBT.—When it is clearly shown that the intention of the parties to a transaction was to give security for a debt or obligation upon some particular property, however informally such intention may be expressed, equity will, in an appropriate proceeding, declare an equitable mortgage or lien to exist, and enforce it against the property in satisfaction of the debt or obligation.

3. MORTGAGES—EQUITABLE MORTGAGE CONSTRUCTIVE NOTICE THOUGH RECORDED IN MISCELLANEOUS RECORDS.—Under Civil Code of 1913, paragraphs 2588 and 2589, specifying the instruments which the recorder must record and the indexes to be kept by him, an instrument for the payment of money, not in the form of a mortgage, but creating an equitable mortgage, because providing for the creation of a lien on described property, was constructive notice to subsequent purchasers, though recorded in the book for miscellaneous instruments and not in one of the books for mortgages.

---

3. As to sufficiency of record of instrument where statute does not prescribe particular book for recordation, see note in 7 **Ann. Cas.** 356.

APPEAL from a judgment of the Superior Court of the County of Pinal. O. J. Baughn, Judge. Affirmed.

Mr. J. E. Morrison, for Appellants.

Mr. E. P. Patterson, for Appellee.

BAKER, J.—This is an appeal from a judgment establishing a lien upon certain mines situated in Pinal county, Arizona, and ordering a sale of the properties to satisfy the lien.

One William C. Windsor was the owner of the mines. He was indebted to R. L. Chamlee in the sum of $1,250, and on the twenty-first day of January, 1914, he executed and delivered to the said Chamlee a written instrument in the words and figures following, to wit:

"State of Arizona, Pinal County.

"For value received, I, William C. Windsor, of Superior, Pinal county, Arizona, hereby agree to pay to R. L. Chamlee, of Florence, Pinal county, Arizona, or order, the sum of twelve hundred and fifty dollars ($1,250), the same being in full settlement and adjustment of all fees due to him by me to date, as well as all cash advanced and expenses incurred by him to date in my behalf, the said sum to become due and payable at such time as I, the said William C. Windsor, shall sell and dispose of the following property, to wit: Four mining claims and four mill sites located in the Pioneer mining district, in Pinal county, Arizona, known as Main No. 1, Main No. 2, Gold Crown No. 1, Gold Crown No. 2, and Main No. 1 mill site, and Main No. 2, mill site, and Gold Crown No. 1 mill site, and Gold Crown No. 2 mill site, as evidenced by location notices recorded in Book No. 11, Miscellaneous, page 246, and Book A of Mines, folios 229 and 230, in the office of the recorder of Pinal county, Arizona, and a special lien is hereby created on said property to secure the payment of this obligation, and the same is to be paid out of the first five thousand dollars received from the sale of said

property, or any part thereof. It being the intention of the parties hereto that a sale shall be made of said property when practical, and that this obligation shall mature at such time, but not before. Said sum to be payable at Florence, Pinal county, Arizona, when due.

"Witness my hand and seal this the 21st day of January, 1914.

"[Signed] WM. C. WINDSOR. [L. S.]""

This instrument was duly acknowledged so as to entitle it to be recorded, and thereafter, to wit, on May 18, 1914, it was recorded in the office of the county recorder of said county in Book 14, Miscellaneous Records.

The defendants claim that they are *bona fide* purchasers without notice, either actual or constructive. The first question for consideration is the legal effect of the instrument. Was it sufficient to constitute an equitable mortgage, or was it a mere naked promise to pay the twelve hundred and fifty dollars out of the first five thousand dollars received on a sale of the mines? Manifestly, if the last construction be placed upon the instrument, the effect would be to deprive it of any character as a security, leaving it to remain a mere written acknowledgment of the debt, and nothing more. If such had been the intention of the parties, a simple promissory note would have been sufficient to carry out such intention. By such a narrow interpretation the distinct meaning conveyed by the language, "and a special lien is hereby created on said property to secure the payment of this obligation," would be utterly destroyed and wiped out. Such a result cannot be justified by any rule of construction. The intention of the parties to the contract is the thing to be ascertained. This cannot be done by reference to a particular sentence or clause. All the parts must be construed together. Tested by this rule, we think that the interpretation that the instrument constituted a naked

promise to pay the twelve hundred and fifty dollars out of the first five thousand dollars received from a sale of the mines would be erroneous.

We recognize the well-settled and familiar principle in equity that where it is clearly shown that the intention of the parties to a transaction is to give a security for a debt or obligation upon some particular property, however informally such intention may be expressed, equity will in an appropriate proceeding declare an equity mortgage or lien to exist, and by its decree enforce the same as against such property in satisfaction of the debt or obligation.

"Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage." 1 Jones on Mortgages, par. 162.

"Courts of equity are not governed by the same rules as courts of law, and generally whenever a transaction resolves itself into a security, or an offer or attempt to pledge land as security for a debt or liability, equity will treat it as a mortgage without regard to the form it may assume." 27 Cyc. 976.

"The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose rather than at the form, and if the intent appears to give, or to charge, or to pledge, property real or personal, as a security for an obligation, . . . the lien follows." 3 Pomeroy's Equity Jurisprudence 3d ed., par. 1237.

"If the transaction resolves itself into a security, whatever may be its form, it is in equity a mortgage." Story, J., in *Flagg* v. *Mann et al.*, 2 Sumn. 486, 533, Fed. Cas. No. 4847; *Ketchum* v. *St. Louis*, 101 U. S. 306, 25 L. Ed. 999 (see also, Rose's U. S. Notes); *Harrigan* v. *Gilchrist*, 121 Wis. 127, 361, 99 N. W. 909; *Charpie et al.* v. *Stout et al.*, 88 Kan. 318, 128 Pac. 396; *Standorf* v. *Shockley et al.*, 16 N. D. 73, 14 Ann. Cas. 1099, 11 L. R. A. (N. S.) 869, 111 N. W. 622; *Pinch* v. *Anthony et al.*, 8 Allen (Mass.), 536; *Daggett* v. *Rankin*, 31 Cal. 321; 2 Story on Equity Jurisprudence, § 1251; 1 Beach on Modern Equity Jurisprudence, par. 291.

For the purpose of ascertaining the intention of the parties, resort must be had, first, to the instrument itself. It is not very skillfully drawn, but we find no serious difficulty in coming to the conclusion that the parties intended to create a security. The language, "and a special lien is hereby created on such property [mines] to secure the payment of this obligation," must, of course, be given force and effect. This language unmistakably manifested the intention of the parties that a lien should thereby be created, and therefore, under the equity rule announced in the foregoing authorities, the instrument should be treated as a mortgage. It evidences a debt and pledges the mines as security for the payment of such debt. It is not the usual mortgage—not a complete one. In short, it is an equitable mortgage.

The next question for consideration is whether the record of the instrument was sufficient to impart constructive notice of the lien to subsequent purchasers and encumbrancers. The defendants contend that the instrument should have been recorded in some one of the books of mortgages in order to impart such notice, and that its record in Book 14, Miscellaneous, was ineffectual for that purpose. The argument is that—

"An instrument . . . recorded in a different book from the one directed" by the statute "is to be regarded the same as if not recorded at all." *Cady* v. *Purser*, 131 Cal. 552, 82 Am. St. Rep. 391, 63 Pac. 844.

The instrument in question is not embraced within any of the classes of instruments for which separate books are specially designated, or for which the recorder is required to keep separate indexes, as was the case in *Cady* v. *Purser*. It is not in the usual or ordinary form of a mortgage. Only such instruments as are mortgages by their express terms are required to be recorded in separate books, denominated "Mortgages of Real Property." Paragraphs

2588, 2589, Civ. Code 1913.  The instrument here is one falling within the class of instruments specified in subdivision 14, par. 2588, i. e.:

"Such other writings as are by law required or permitted to be recorded affecting real estate."

The recorder is required to keep separate books in which to record instruments of this class.  Paragraph 2590.  We therefore hold that recording the instrument in question in Book 14, Miscellaneous, was proper, and that when so recorded it had the legal effect to impart constructive notice to all purchasers and encumbrancers, including, of course, the defendants.  The Supreme Court of California so construed a similar statute in that state.  *Kent et al.* v. *Williams et al.,* 146 Cal. 3, 79 Pac. 527.

It must be held that the defendants took the mines subject to the lien provided for in the agreement. The relief granted by the judgment seems to be in accordance with the established rules of equity jurisprudence.

We therefore conclude that the judgment of the trial court and the order denying a new trial must both be affirmed; and it is so ordered.

CUNNINGHAM, C. J., and ROSS, J., concur.