[Civil No. 2659. Filed January 9, 1923.]

[262 Pac. 612.]

JOSEPH A. GAMBLE, General Receiver of Insolvent National Banks (Impleaded With Others), Appellant, v. CONSOLIDATED NATIONAL BANK OF TUCSON, a Corporation, Appellee.

Messrs. Curley & Pattee, for Appellant.

Mr. Francis M. Hartman, for Appellee.

ROSS, C. J.—Colin Cameron, Jr., being the owner by descent and by will of an undivided one-fourth interest of his deceased mother's estate, on April 4th, 1923, obtained a loan from the Southern Arizona Bank & Trust Company of $9,400, evidenced by his promissory note of even date. At the same time he executed and delivered to the said bank and trust company a certain written instrument, by the terms of which it is disclosed he intended to put up his interest in his mother's estate as security for the payment of said note, and the executors of said estate were informed of what he had done. This instrument was, on December 11th, 1923, duly recorded in the miscellaneous records of the county recorder of Pima county. On May 22d, 1924, said note not having been paid by Cameron, in pursuance with the terms of his agreement of April 4th, 1923, given to secure the same, he executed and delivered to the Southern Arizona Bank & Trust Company a mortgage of his interest in certain realty of the assets of his mother's estate. The note, the security agreement, and the mortgage were thereafter assigned by the Southern Arizona Bank & Trust Company to the Consolidated National Bank of Tucson (appellee), and this action was brought by it against Cameron and appellant to recover on note and to foreclose mortgage lien.

Between the time of the execution of the note and security agreement, and the execution of the mortgage, to wit, on February 16th, 1924, H. J. Spurway, as the receiver of the Tucson National Bank, of Tucson (insolvent), obtained and caused to be docketed a judgment for $5,000 against Colin Cameron, Jr., which judgment the receiver asserted in his answer was a lien on the real property of said estate prior and superior to the lien of mortgage sought to be foreclosed. Joseph A. Gamble, as the general re-

ceiver of insolvent national banks, has been substituted, and as such receiver defends this action.

Upon the trial the contest was over the legal effect of the security agreement of April 4th, 1923, it being contended by appellee that it was an equitable mortgage of the whole of Cameron's interest in his mother's estate, including the real property against which appellant asserts his judgment lien, whereas the appellant claims that such agreement by its terms limited the security to Cameron's one-fourth interest in the personal property of his mother's estate. The trial court adopted the former construction of the agreement, and entered judgment accordingly, from which this appeal is taken.

The sole question for decision being, as indicated, a construction of the security agreement of April 4th, we here set such agreement out:

"Know all men by these presents: That I, Colin Cameron, Jr., of the city of Tucson, county of Pima, state of Arizona, and one of the heirs of the estate of Alice F. Cameron, deceased, for and in consideration of the sum of $9,400 to me in hand paid by the Southern Arizona Bank & Trust Company, a corporation doing business in the city of Tucson, county of Pima, state of Arizona, the receipt whereof is hereby acknowledged, and which said sum is further evidenced by a certain promissory note executed this 4th day of April, 1923, and payable six months after date to the Southern Arizona Bank & Trust Company, with interest thereon at the rate of 8 per cent per annum, have sold, assigned, transferred, and set over, and by these presents do sell, assign, transfer, and set over, to the said Southern Arizona Bank & Trust Company, my interest in and to the said estate of Alice F. Cameron, deceased, or so much thereof as may be sufficient to repay to the said Southern Arizona Bank & Trust Company the said sum of $9,400, together with the interest thereon, and costs as evidenced by said promissory note, a copy of which is hereto attached; provided, however, that in the event that the said sum evidenced by said note, together

with the interest and other costs and expenses stated thereon, be paid at the time and in the manner in said note specified, then this assignment shall be void and of no effect, and for the purpose of this instrument I do hereby appoint the said Southern Arizona Bank & Trust Company, its successors and assigns, my true and lawful attorney, irrevocable, with power of substitution and revocation, for the use, and at the proper costs and charges, of myself, to demand and to receive the said money that may be due me from said estate to the extent of this indebtedness. And I do for myself and my heirs covenant that I will not collect or receive the same or any part thereof save and except such sums over and above the amount secured by this assignment from the executors of said estate.

"It is agreed, however, that the said Colin Cameron, Jr., shall have the privilege of an extension of an additional period of six months in which to repay all or any of this amount so secured remaining unpaid at the end of the said six months, by payment of such sum as he may receive, or be entitled to receive, from said estate, by securing the balance of the sum so remaining unpaid by executing a good and sufficient mortgage on such property as he may receive from said estate, or of which he is the owner at the date of said extension of this agreement, said property to be of the appraised value of double the amount of said debt so remaining unpaid.

"In witness whereof I have hereunto set my hand this 4th day of April, 1923.

"[Signed]   COLIN CAMERON, Jr."

The character of this instrument is easily discernible from its contents. It needs no label. Plainly it is intended to secure a loan of money. It is a pledge of Cameron's interest in his mother's estate as security for a debt, and provides that the debtor may relieve his property of the burden by payment of the debt. It creates a present lien defeasible upon payment. It is a mortgage, not as full and complete in its details as the usual mortgage, but pregnant with the cardinal purpose of every mortgage, to wit, security

of a debt. It lacks the formality of the acknowledgment by the mortgagor and mortgagee required by the statute for a realty mortgage (par. 2079, Civ. Code 1913), and it has not the affidavit of *bona fides* required for a chattel mortgage (par. 4124, Civ. Code 1913). The granting clause consists of operating words alike applicable to real and personal property. They are "have sold, assigned, transferred and set over." The instrument falls within the statutory definition of a mortgage, which is as follows:

"Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge." Par. 4095, Civ. Code 1913.

The security is described as "my interest in and to said estate . . . or so much thereof as may be sufficient to repay . . . the said sum of $9,400. . . . " It is necessary, of course, that a description of the particular property intended to be charged with the payment of a debt be such as to identify it or furnish the means of its identification. 41 C. J. 399, §§ 236 and 237; 3 Pomeroy's Equity Jurisprudence, § 1235; 41 C. J. 294, § 34. Here the security is described as of the estate of Alice F. Cameron, deceased. The real property belonging to the estate was located in Pima county and of record in the office of the county recorder of that county in the name of the deceased. Thus the description contained in the mortgage, or security agreement, furnished ample means to identify the particular real property intended to be charged.

As we understand appellant's contention, it is that the agreement on its face manifests an intention to apply the proceeds of Cameron's one-fourth interest in his mother's estate, and not to create a lien upon

the property itself. If this were true, the instrument would fail as a mortgage. *Smith* v. *Rainey,* 9 Ariz. 362, 83 Pac. 463. The defeasance clause describes only one of the ways in which the debt could be paid, i. e., out of the debtor's share of any moneys of the estate coming into the hands of the executors pending the administration. While the instrument evinces an intention to have any such moneys applied in repayment of the note, and, to that end, undertakes to prevent their diversion to any other use or purpose, it is obvious the debtor was privileged to pay his obligation out of any other available source.

We think the property intended as security is sufficiently described for identification, and that the declaration of lien against it is explicit.

This dispenses with the necessity of considering the effect of the mortgage of May 22, 1924, which was taken and accepted by the Southern Arizona Bank & Trust Company as security to Cameron's note, in accordance with the terms of the security agreement of April 4, 1923.

What we said in *Stephen* v. *Patterson,* 21 Ariz. 308, 188 Pac. 131, speaking through Mr. Justice BAKER, concerning equitable mortgages, fits very well the facts of this case:

"We recognize the well-settled and familiar principle in equity that where it is clearly shown that the intention of the parties to a transaction is to give a security for a debt or obligation upon some particular property, however informally such intention may be expressed, equity will in an appropriate proceeding declare an equity mortgage or lien to exist, and by its decree enforce the same as against such property in satisfaction of the debt or obligation [citing authorities].

"For the purpose of ascertaining the intention of the parties, resort must be had, first, to the instrument itself. It is not very skillfully drawn, but we find no serious difficulty in coming to the conclusion

that the parties intended to create a security. The language, 'and a special lien is hereby created on such property (mines) to secure the payment of this obligation,' must, of course, be given force and effect. This language unmistakably manifested the intention of the parties that a lien should thereby be created, and therefore, under the equity rule announced in the foregoing authorities, the instrument should be treated as a mortgage. It evidences a debt and pledges the mines as security for the payment of such debt. It is not the usual mortgage—not a complete one. In short, it is an equitable mortgage.''

In that case we also held the record of the instrument in miscellaneous records was constructive notice.

We think the court correctly decided that the mortgage lien of appellee was prior and superior to that of the appellant. The judgment is accordingly affirmed.

LOCKWOOD and McALISTER, JJ., concur.