[Civil No. 2899. Filed April 22, 1930.]

[286 Pac. 930.]

REBECA SNOW, Appellant, v. CHARLES KEN-NEDY, Surviving Husband of MOLLIE POTTS KENNEDY, Deceased, E. J. F. HORNE, Administrator of the Estate of MOLLIE POTTS KENNEDY, Deceased, and HENRY A. DAMERON, Appellees.

476

Messrs. O'Sullivan & Morgan, for Appellant.

Messrs. Favour & Baker, for Appellees.

McALISTER, J.—This is an action by Rebeca Snow against Charles Kennedy, E. J. F. Horne as administrator of the estate of Mollie Potts Kennedy, and Henry A. Dameron in which she seeks to have certain real property located in Prescott, Arizona, impressed with a trust and its title quieted in her. Judgment was entered against her and she has brought the case here for review.

The amended complaint alleges, among other things, that in 1912 Rebeca Snow and her husband, J. C. Snow, entered into a written contract with Mollie Potts, a daughter of the former and step-daughter of the latter, whereby they agreed to con-

vey to her certain real estate in the city of Prescott, Arizona, in return for an agreement by her to support and care for them during their lifetime and that Mr. and Mrs. Snow to carry this agreement into effect made and delivered to Mollie Potts on July 18th, 1913, a deed conveying to her lots 1 and 2 and the south half of lot 3 and the south one-half of lots 22 and 23, all in block 6, Fleury's addition to Prescott, Arizona, and Mollie Potts contemporaneously therewith executed and delivered to them a warranty deed reconveying to them the same property, the understanding being that her deed to them would become effective in the event that one of them survived her and not otherwise. Mollie Potts lived up to her agreement with the Snows at all times until her death in March, 1928, in Los Angeles, California. Her stepfather, J. C. Snow, died in November, 1927, but her mother, Rebeca Snow, survived her.

In 1917, Mollie Potts and defendant, Charles Kennedy, were married. They lived in the home with plaintiff and her husband in Prescott, Arizona, until 1922, when the four moved to Los Angeles, California, where they continued to reside together, Mollie Potts at all times receiving the rents and proceeds from the property in Prescott and discharging her full duty of caring for her mother and stepfather. On April 20th, 1925, Mollie Potts Kennedy and Charles Kennedy entered into a written contract with defendant, Henry A. Dameron, whereby they agreed to sell to him a portion of said property, namely, lots 1 and 2 and south half of lot 3, for $4,370 to be paid for as follows: $240 cash, $60 per month until paid in full and eight per cent interest on deferred payments. After the death of Mollie Potts Kennedy the plaintiff notified defendant Dameron that she was the owner of the property and was going to have her deed recorded, and he made no further payments thereon, there being due at that time, March 25th, 1928, $2,800

and interest, together with several years' delinquent taxes which she had paid. Her deed was placed on record in Yavapai county, Arizona, in May, 1928, but the defendant, Charles Kennedy, acting upon the theory that the property belonged to Mollie Potts Kennedy in her lifetime and, hence, to him as her sole heir, had caused to be filed on April 29th, 1928, in the superior court of Yavapai county, Arizona, a petition praying that letters testamentary on her estate be issued to E. J. F. Horne of Prescott, Arizona.

Plaintiff alleges upon information and belief that Charles Kennedy, surviving husband of Mollie Potts Kennedy, E. J. F. Horne, administrator of her estate, and Henry A. Dameron claim some interest in the real estate in question adverse to plaintiff's but that the two former have none whatever though the third, Henry A. Dameron, has a right therein entitling him to a deed from plaintiff upon his payment to her of the amount still due by him on the property, namely, $2,800, and the interest, together with the delinquent taxes paid by her. She offers to deliver him, or place in escrow if directed by the court, a deed conveying the premises upon the payment of the amount due under the contract.

To this complaint a general demurrer and a plea in abatement were interposed by the defendants, Henry A. Dameron and E. J. F. Horne, administrator, and as grounds for the latter they allege that there was then pending in the superior court of Los Angeles county, California, an action, No. 259,733, brought by Rebeca Snow, plaintiff herein, against the defendant, Charles Kennedy, and others, copies of the amended complaint, answer, judgment and findings therein being attached as exhibits, and that following that action Charles Kennedy assigned to Henry A. Dameron all his right, title and interest in the property of Mollie Potts Kennedy in Arizona, which

is the subject matter of both lawsuits, the defendant Dameron as assignee being the same party as Kennedy.

Replying to this plea plaintiff denied that the case referred to, cause No. 259,733, was then pending in the California court and alleged that the same had been tried and judgment rendered in favor of Rebeca Snow, and against Charles Kennedy on February 7th, 1929, and that the judgment had been paid and satisfied by defendant Kennedy on the same day. Plaintiff admitted that she brought the action in California against Kennedy but denied that the Prescott property of Mollie Potts Kennedy was the subject matter of that lawsuit or in any way embraced within its issues and alleged that that case concerned matters separate and distinct from those involved in this one, that the judgment rendered therein did not and could not adjudicate the title to the property involved in this action and that neither the defendant Dameron nor the defendant Horne was a party to that suit or at any time in privity with the defendant Kennedy. The California action, it was alleged, was brought for the purpose of tracing and discovering certain trust funds received by Mollie Potts Kennedy during her lifetime from the sale of certain real estate at Prescott, Arizona (which had been held in trust by her for the support of plaintiff and her husband), and appropriated and converted by defendant, Charles Kennedy, but did not include any of the $2,800 due from defendant Dameron to Mollie Potts Kennedy at the time of her death; that the only moneys taken into consideration by the court in rendering judgment in that case for the plaintiff in the sum of $2,500 were these: Moneys received by Mollie Potts Kennedy from the sale of the other parcels of real property included in the respective deeds of July 18th, 1913, and held in trust by her, namely, the south half of lots 22 and 23 of block 6 aforesaid; moneys

paid by Dameron up to the 25th of March, 1928, on the lots purchased by him; and moneys paid by holders of a previous option on the lots sold to Dameron. It was further averred that under the trust agreement of 1912 the Prescott real property in question, which was on record in the name of Mollie Potts Kennedy, vested immediately upon her death in plaintiff and that shortly thereafter, namely, on May 3d, 1928, she placed her deed thereto of record, both of these acts taking place long prior to the institution of the California suit.

Some two months following the filing of this reply, there having been no hearing on the issue made thereby in the meantime, Dameron filed an answer in which he set up eight additional defenses, the third and fourth of which were also based upon the California suit, No. 259,733, and denominated respectively a plea of *res adjudicata*, in bar of the action, and a plea of estoppel by election of remedy. In support of the former he alleges that in both suits the cause of action, the parties and the controlling issue are the same; that the purpose of that action was to impress upon the property described therein, among which was the Arizona property in question here, a trust in favor of the plaintiff, the relief prayed for being this: That Kennedy be required to disclose what property he possessed or controlled, its condition and whereabouts, and to account for all the property adjudged to have belonged to plaintiff or Mollie Potts Kennedy during her lifetime, that "it be adjudged that he holds the same in trust for the use and benefit of the plaintiff herein" and that plaintiff's rights therein be adjudged and enforced in this action. It is alleged further that this prayer was granted when that court decreed that the property in Los Angeles which had been purchased by Mollie Potts Kennedy and Charles Kennedy for $12,000 and was held by the latter after the death of the former

through the right of survivorship should be impressed with a trust in favor of plaintiff to the extent of $2,500 and judgment for her in this sum was rendered, the court expressing the view that this proportion of the $12,000 had been received by Kennedy and his deceased wife from the sale of the Arizona property deeded to the latter by plaintiff and her husband in August, 1913.

In support of his plea of estoppel by election defendant Dameron alleges that plaintiff elected her remedy when she filed cause No. 259,733 in the superior court of Los Angeles county, California, and that she cannot now pursue a different remedy in this jurisdiction, it being averred that the facts constituting the cause of action in both cases have been adjudicated by the judgment in that action.

The plaintiff by reference made her reply to the plea in abatement filed by defendants, Dameron and Horne, administrator, her reply to these two defenses.

The defendant, Charles Kennedy, after demurring generally to the complaint, set up the California action by special demurrer, by plea in abatement and by answer, though he disclaimed any interest in the property in question, alleging in his answer that he had theretofore assigned all his right therein to the defendant Dameron.

The pleas of *res adjudicata* and estoppel by election were by agreement heard first, and after the evidence in their support, the plaintiff offering none thereon, had been received and counsel had presented their respective views as to its effect the court sustained them and immediately thereafter rendered final judgment against the plaintiff, giving the defendants their costs, and it is this decree the plaintiff seeks to reverse by this appeal.

There are several assignments but it is necessary to consider only the one based upon the order sustaining these pleas. In holding them good the court

stated that the appellant, Mrs. Snow, had a cause of action against defendant Kennedy and that she could have come to Arizona in the first place and filed an action to quiet title to the Prescott property, or have pursued in California by a proper proceeding the funds which she alleges were derived from the sale of this property and invested over there, and that, having chosen the latter course and succeeded therein, she cannot now be permitted to litigate the same matter again in the courts of this state. In other words, she cannot, as remarked by an English Chancellor long years ago, ''have two bites of the same cherry.'' This ruling was undoubtedly correct if it be true that appellant had but one cause of action against Charles Kennedy and she could have prosecuted it either in California or Arizona.

It is true that following the death of Mollie Potts Kennedy, Mrs. Snow was entitled to certain relief as a result of the trust agreement of 1912 and the acts of the Kennedys thereafter, but a study of the record brought to this court convinces us that she could not have obtained this completely in a single action against Charles Kennedy whether she brought it in California or Arizona. This conclusion is inescapable when the full situation is considered. It should be kept in mind that in deeding the Prescott property to Mollie Potts on July 18th, 1913, Mr. and Mrs. Snow were carrying out their agreement with her of 1912 and that in redeeding it to them the same day she was doing likewise, because the understanding between them was that the property was to be the daughter's in the event she outlived the mother but the mother's in the event she lived longer than the daughter and that the deed from the mother to the daughter would be placed of record immediately but that the one from the daughter to the mother should be held by the latter and not recorded unless

she survived the daughter. (The stepfather having died before either of the others we treat the agreement as between the daughter and the mother.) Under this arrangement it is clear that the daughter held this property merely in trust for the mother while they both lived, that her death ended the trusteeship, and that the legal title vested immediately thereafter in the mother, the survivor. Hence, from the day of the daughter's death on March 25th, 1928, the title was in Mrs. Snow, though it was subject to the equity of appellee Dameron because he entered into an option and contract to purchase the property from Mollie Potts Kennedy and her husband without knowing that she held it merely in trust, since the deed of July 18th, 1913, from the mother to her was on record while the one of the same date from her to the mother was not. The deed which she and her husband executed to Dameron had not been delivered when she died but was held in escrow, and consequently the legal title had not passed to him but remained in Mollie Potts Kennedy during her lifetime as security for the unpaid purchase price and at her death went to Mrs. Snow, though Dameron's equitable interest entitled him to a deed from the latter conveying the legal title upon his payment to her of the $2,800 due by him, even though this title had vested in her subsequent to the date of his agreement to purchase. According to Pomeroy's Equity Jurisprudence, third edition, paragraph 1260, the vendor of real estate before conveyance, "although possession may have been delivered to the vendee, and although under the doctrine of conversion the vendee may have acquired an equitable estate, . . . retains the legal title, and the vendee cannot prejudice that legal title, or do anything by which it shall be divested, except by performing the very obligation on his part which the retention of such title was in-

tended to secure—namely, by paying the price according to the terms of the contract. . . . In case of a contract for sale before conveyance, the vendor has a legal title, and has no need of any lien; his title is a more efficient security, since the vendee cannot defeat it by any act or transfer even to or with a *bona fide* purchaser.'' In case of a failure on Dameron's part to comply with his contract it is apparent that it would have been the duty of the escrow-holder to deliver the deed not to the representative of Mollie Potts Kennedy's estate but to Mrs. Snow who following the daughter's death stood in her shoes so far as the legal title to this property was concerned.

Such being the status of the title to this property when Mrs. Snow instituted her action against Kennedy in California it is clear that she obtained all the relief the facts in that case entitled her to in that state, namely, a judgment for $2,500, the amount the court there was convinced Mollie Potts Kennedy had invested in California from the proceeds of this property. Funds she had not actually received from this source, even though the purchaser was under contract to pay them in the future, were not awarded in that judgment, because they had never come into her possession and could not have been invested by her in that state. The statements of the court in rendering judgment that Mollie Potts Kennedy had sold the Arizona property deeded to her by her mother and stepfather on July 18th, 1913, for $4,000, that she had used $1,500 of this to discharge the mortgage against it when conveyed to her, that she had invested the remaining $2,500 in California real estate and that it represented 25/120 of the $12,000 they had placed in property held by them over there indicate that the court considered only the funds that she had actually received from the trust property

and based its action in no degree upon those that had never gone into her possession. In holding that she received $4,000 from this source, $1,500 of which was used to discharge the mortgage, the court could not have considered merely the amount that had gone to her from Dameron, because, first, the total purchase price for his lots was $4,370 instead of $4,000 and she had received from him up to the time of her death only $2,280, unless he had paid more than the terms of his contract required him to—$240 upon its execution and $60 per month thereafter in both principal and interest until satisfied—and, because, second, she had received funds from two deals other than the one with Dameron, both of which concerned this trust property. From the court's language it is clear that the moneys from these transactions together with the $2,280 from Dameron made up the $4,000 received from this property and constituted the items upon which it acted in arriving at its judgment. It stated that Mrs. Snow's interest should be determined by the funds invested in California that came "to defendant Kennedy and his deceased wife from the sale of the Arizona property deeded his wife by plaintiff and her husband by their deed executed on July 18, 1913." Evidently reference is here had to the funds received from the sale of *all* the trust property and not merely a part of it. It is true the record does not disclose how much came from the two transactions to which Dameron was not a party but inasmuch as it was the full purchase price of the south half of lots 22 and 23 together with the amount paid by an undisclosed person on a former, forfeited option on the Dameron lots, it must have been sufficient, when added to the payments Dameron actually made, to have totalled at least $4,000. Hence, it is apparent that the unpaid portion of the Prescott property was not involved

in that proceeding and that it constituted no part of the subject matter dealt with therein.

Appellee takes the further position that if the judgment in the California case did not give her all that was due her by Kennedy, meaning the entire purchase price of the Prescott lots, it could and should have done so, because all the property of Charles Kennedy, Mollie Potts Kennedy during her lifetime, and of her estate upon which a trust might operate was before the court in that case and that any attempt to litigate it in this action comes too late. If it be true that the entire purchase price of this property could have been awarded to Mrs. Snow in an action over there against him this contention would be correct, but in view of the fact that Kennedy owned no interest whatever in it while Mollie Potts Kennedy was alive and that the legal title to it passed to Mrs. Snow immediately upon her death rather than to her heirs or personal representative, it is apparent that an action by Mrs. Snow against him in California in so far as it sought to quiet the title to this property in her and incidentally to establish her right to receive the amount due thereon would have availed her nothing. But even if he had been the owner of some interest therein that court would have been powerless to grant her this relief because an action to quiet title is a proceeding *in rem* and a court has no jurisdiction to render a judgment affecting the title to real property unless it has jurisdiction of the *res*, since real estate is governed by the law of its situs, is "subject only to the jurisdiction of the courts of the state where it is situated," and "cannot be directly affected by the judgment or decree of a court of any other state." 23 Cyc. 1548. This doctrine is stated in 15 R. C. L. 909, 910, in this language:

"Each state is the equal of the others in point of authority and power, and for this reason one state through its courts cannot extend its coercive power, nor affect by judicial determination property outside of its own territory; and if the courts of any state assume to pass title to property not within its jurisdiction, or to direct its sale, whether in the endorsement of a lien or otherwise, or to partition it, or to give judgment affecting the right to its possession, their action will be treated as absolutely void in the state wherein the property is situated. . . . Even a decree of a court of chancery, with respect to realty beyond its jurisdiction, can have no direct operation upon the property, and cannot *per se* affect the legal or equitable title thereto. This is true although it is also firmly established that the courts exercising chancery powers in one state have jurisdiction to enforce a trust, and to compel the specific performance of a contract in relation to lands situate in another state after having obtained jurisdiction of the persons of those upon whom the obligation rests."

It is equally clear that an action by Mrs. Snow against Kennedy in Arizona seeking the same relief, that is, a decree quieting her title to the Arizona property and incidentally establishing her right to the payments due thereon, would have been equally unavailing, because at no time did he own any interest in this property, either individually or through his wife. To obtain this relief it was of course necessary that she proceed against those having an interest therein or whose claim to this effect had some real basis, and, according to the record, the only person to whom this applied was Henry A. Dameron who had agreed to purchase from the Kennedys in 1925 without notice of the trust for $4,370 a part of the Arizona property and who at the time of the death of Mollie Potts Kennedy had paid thereon $1,570, leaving $2,800 still due. Such is the extent of his equity, and it should be protected by the delivery to him of a deed from Mrs. Snow conveying the legal

title provided he makes the remaining payments; if he does not it becomes hers also. He acquired no interest whatever through the assignment to him of Charles Kennedy's right, title and interest in the property of Mollie Potts Kennedy in Arizona, because Charles Kennedy had no more interest therein to assign after her death than before since the legal title to that part of the property that still remained in her passed immediately upon her death not to him or her heirs but to Mrs. Snow. Hence, neither Dameron nor appellee Horne, administrator, was at any time in privity with Charles Kennedy as to the title to the property purchased by Dameron or the right to the payments due thereon.

The situation in brief is this: Mrs. Snow had had an action against Kennedy in California for the recovery of the trust funds he and his wife had received from the Arizona property and invested in real estate over there and one against Dameron in Arizona to quiet the legal title to the lots he had contracted to purchase from the Kennedys and establish incidentally her right to receive the payments due thereon when Mrs. Kennedy died, but in neither could she have obtained the full relief to which she was entitled. Hence, the pleas of *res adjudicata* and estoppel by election of remedy had no application and it was error to sustain them. Before a plea of *res adjudicata* should be permitted to deprive a party of a trial on the merits these elements, none of which are present in this instance, should appear: "First, the parties or their privies must be the same; second, the subject-matter of the action must be the same; third, the issues must be the same, and must relate to the same subject-matter; fourth, the capacities of the persons must be the same in reference to the subject-matter and to the issues between them." *Cox* v. *Colbert,* 135 Okl. 218, 275 Pac. 317, 322.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

LOCKWOOD, C. J., and ROSS, J., concur.