[No. 22407.  Department Two.  July 14, 1930.]

MILTON BUTTON, *Respondent*, v. TRADERS TRUST COM-
PANY OF TACOMA *et al.*, *Appellants*, EDITH
MACFARLANE *et al.*, *Respondents*.[1]

*Wm. H. Pratt*, for appellants. ·
*J. W. Quick*, for respondents. °

MAIN, J.—This was an action of interpleader and for
specific performance of a real estate contract.  At the
time the action was begun, the plaintiff paid into court
approximately the sum of $1,000, which was the
balance due on the contract.  The defendants George M.

Reported in 289 Pac. 1010.

Hellar and wife claimed this money, as did also the other defendant, Edith MacFarlane. The cause was tried to the court without a jury, and resulted in findings of fact from which the court concluded that the plaintiff was entitled to a specific performance of the contract and that Mrs. MacFarlane was entitled to the money. From the judgment entered in accordance with the findings and conclusions, George M. Hellar and wife appeal.

The facts essential to be stated are these: For many years, W. G. Hellar and John F. Lyon were copartners, doing a real estate and loan business in the city of Tacoma, under the name of Hellar, Lyon & Company. Prior to the year 1909, George M. Hellar was a member of the firm. Before George M. Hellar retired from the firm, the Traders Trust Company, a corporation, was organized and each of the parties took one-third of the capital stock. The corporation was organized as a holding company for Hellar, Lyon & Company to facilitate the transfer of title to property which that company might acquire. The corporation acquired some property in its own right, but that is here immaterial. As to the property which was taken in the name of the corporation and was held in trust, the business with reference thereto was transacted by Hellar, Lyon & Company. The corporation kept no books of account with reference to this property, but Hellar, Lyon & Company kept an open account with the corporation. The corporation was, in a sense, inactive, and seldom held a meeting of its stockholders. W. G. Hellar was the president thereof, George M. Hellar, vice-president, and John F. Lyon, secretary.

After George M. Hellar severed his connection with the firm of Hellar, Lyon & Company, that company sold to him a mortgage for $2,500, which covered two lots in the city of Tacoma. The mortgage was not

paid, and the title in satisfaction of the mortgage was transferred to the Traders Trust Company. At this time, as George M. Hellar testified, he agreed that Hellar, Lyon & Company should handle the property, pay him seven per cent interest semi-annually upon any balance that might be due him, and, if any profit was made over and above the $2,500, that such profit should go to Hellar, Lyon & Company or to W. G. Hellar and John F. Lyon, they being at the time the only members of that copartnership. One of the lots was sold for $2,500, but the money was not all turned over to George M. Hellar. Later the other lot was sold to Milton Button, who instituted this action, for the sum of $2,000, $150 being paid at the time, and the balance to be paid at the rate of $30 per month. When this contract was paid to the extent that only approximately $1,000 remained due thereon, Hellar, Lyon & Company still owed George M. Hellar, on account of the two contracts, approximately the same amount of money.

On or about July 15, 1926, Hellar, Lyon & Company, acting through John F. Lyon, who for some years prior to that time had transacted the business of that company and the trust business of the Traders Trust Company, the corporation, sold securities to the extent of something over $5,000 to Mrs. MacFarlane, who at the time turned over to Hellar, Lyon & Company the sum of $5,000. In the securities, which at the time were delivered to Mrs. MacFarlane, was the Milton Button contract, which is involved in this proceeding. Later, the contract, with the other securities, was turned back to Hellar, Lyon & Company, in order that they might make the collections thereon. There was no assignment on the Button contract that was turned over to Mrs. MacFarlane, but, at the time, Hellar, Lyon & Company, acting through John F. Lyon, wrote her a letter concerning the assignment of the securities and in con-

firmation thereof. W. G. Hellar died October 27, 1927, and John F. Lyon, March 18, 1929. Thereafter George M. Hellar and Mrs. MacFarlane both claimed the balance due upon the Button contract.

The question upon this appeal is which one of them is entitled to the money. There is no controversy over the fact that Button, having fully paid for the property by tendering the balance into court, was entitled to the deed.

Under the general question above stated, the first question is whether Hellar, Lyon & Company was the agent of the Traders Trust Company for the purpose of disposing of the Button contract. In other words, in assigning that contract to Mrs. MacFarlane, did Hellar, Lyon & Company, acting through John F. Lyon, act within the scope of its authority?

The trial court made this finding:

"That some time in July, 1926, the said Traders Trust Company of Tacoma, a corporation, acting through its duly authorized officer and agent, John F. Lyon, did, for a valuable consideration, which was received by said Traders Trust Company of Tacoma, at that time, sell, assign and set over to the defendant, Edith MacFarlane, all the rest, residue and remainder then due or to become due under said contract of March 18, 1925, hereinabove referred to and the money deposited by the plaintiff herein, to wit, nine hundred sixty-nine and 56/100 dollars, belongs to the defendant, Edith MacFarlane, subject to the conditions hereinafter mentioned."

After reading the evidence, we are of the opinion that the finding of the trial court is sustained thereby. As already indicated, for many years Hellar, Lyon & Company had transacted all the business with reference to the property which stood in the name of the Traders Trust Company in trust, kept an open account with the corporation, and the corporation kept no books of account with reference to such property.

In *Parker v. Hill,* 68 Wash. 134, 122 Pac. 618, it is said:

"The rule is that persons dealing with corporate agencies have a right to rely upon the apparent authority of those in charge of the corporate business, and for acts done within the scope of that authority the corporation is bound." (Citing authorities.)

In *Livieratos v. Commonwealth Security Co.,* 57 Wash. 376, 106 Pac. 1125, it is said:

"In this day and age when so large a part of the business of the commercial world is transacted through the agency of corporations, those dealing with them cannot be expected to prove the authority of corporate agents by producing a power of attorney under the corporate seal. They have a right to rely upon the apparent authority of those with whom they deal, and for acts done within the scope of that authority the corporation is bound."

At the time Mrs. MacFarlane acquired the Button contract, she had no knowledge or information which would lead to knowledge that the property covered by it which stood in the name of the Traders Trust Company in fact belonged to George M. Hellar. Had she known that George M. Hellar was the beneficial owner of the property and that the Traders Trust Company held the title in trust for him, the situation would not be different, because, under his testimony, Hellar, Lyon & Company had a right to handle the contract, which meant more than simply collect the payments thereon. If Hellar, Lyon & Company had a right to handle the contract, it would seem that they would have a right, especially under the facts of this case, to make a sale and transfer of the balance that was due thereon.

Hellar, Lyon & Company having acted within the scope of its authority in transferring the Button contract to Mrs. MacFarlane, the next question is whether the transfer was a sale or the property was

turned over to her as security. The letter above referred to contains some statements which indicate an absolute sale, and others which might indicate that the properties turned over to Mrs. MacFarlane were as securities for a loan. Taking the letter in its entirety, we are inclined to think that it shows a sale and not a transfer as security. Assuming, however, that the letter is ambiguous and doubtful in its meaning, the oral testimony received makes it plain that Mrs. MacFarlane was purchasing the securities, including the Button contract, and was not taking them as security for a loan. This was the view of the trial court, and we are in accord therewith.

Whether Hellar, Lyon & Company would have been acting within the scope of their authority had they transferred the securities for the protection of a loan, it is not necessary here to determine and we express no opinion on that question.

Full consideration having been paid for the securities, and they having been delivered to the purchaser, even though there had been no written assignment, in law there would be an equitable assignment. In 5 Corpus Juris, page 902, it is said:

"But it is well settled at present that an equitable assignment of an instrument under seal, or specialty, may be by parol as well as by deed. It is sometimes said that, if the assigned instrument is under seal, the assignment thereof must be under seal unless the instrument itself is delivered, in which case an oral assignment is said to be sufficient."

The thing which was assigned to Mrs. MacFarlane, so far as the Button contract was concerned, was the right to collect the balance due thereon.

The judgment will be affirmed.

MITCHELL, C. J., FULLERTON, FRENCH, and HOLCOMB, JJ., concur.