## WATSON v. REPUBLIC LIFE INS. CO. OF DALLAS, TEX.

### No. 9243.

Circuit Court of Appeals, Ninth Circuit.

April 1, 1940.

Rehearing Denied May 7, 1940.

Francis C. Wilson and John C. Watson both of Santa Fe, N. M., and Fred C. Knollenberg, of El Paso, Tex., for appellant.

G. W. Silverthorne and Kent Silverthorne, both of Phoenix, Ariz., for appellees.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

We are asked to review a judgment granting a motion to dismiss a bill filed by appellant.

Section 1, Ch. 5, of the Act of February 9, 1905, Laws of the Territory of New Mexico, 1905, p. 12, established an "Insurance Department" in such territory, and § 2 provided for the appointment of a "superintendent of insurance" to be the head of such department. The Act of March 17, 1909, Ch. 48, Laws of the Territory of New Mexico, 1909, p. 112, amended certain sections of the previous act, and enacted new provisions. Section 38 was a new provision, and provided in part:

"Any life insurance company now or hereafter organized in this Territory may register any of its policies with the insurance department and deposit with the Superintendent of Insurance, approved securities to the amount of not less than the net value of all such policies registered. * * *

"Provided, That all companies registering any policies under this act shall at all times keep the amount of securities on deposit with the Superintendent of Insurance equal to the amount of the legal reserve under such policies then in force * * *."

The National Life Insurance Company of the Southwest, hereafter called "National", organized in New Mexico, issued a large number of policies which it procured to be registered pursuant to the provision quoted above. Prior to 1923, National transferred all its assets to the Two Republics Life Insurance Company, hereafter called "Two Republics", organized in Texas, and Two Republics assumed the liabilities of National under the registered policies.

On January 16, 1923, Two Republics was the owner in fee of a quarter-section of land in Maricopa County, Arizona, and entered into a contract, with one Wallace and his wife, whereby Two Republics agreed to sell the land in question to the Wallaces who agreed to pay therefor $32,255, payable in specified installments. Two Republics further agreed to execute a warranty deed conveying the land to the Wallaces as grantees, and the Wallaces agreed to execute a quit-claim covering the land, to Two Republics as grantee. By the terms of such agreement, the two deeds were to be delivered to a Mesa, Arizona bank in escrow, to be delivered to the Wallaces upon performance of their duties under the contract, and to be delivered to Two Republics upon breach of the contract by the Wallaces. The deeds were executed, and deposited with the Mesa bank, and the contract was thereafter properly recorded in Maricopa County, Arizona.

On April 5, 1923, Two Republics executed and delivered to the New Mexico State Bank Examiner, who was then required to act in the place of the Superintendent of Insurance, a document entitled "Assignment of Securities" covering the above described contract, which document provided in part:

"Whereas * * * National * * * has registered its policies with the Insurance Department and has deposited with such Department approved securities to an amount of not less than the net value of all policies so registered; and whereas such securities, while so on deposit, and the proceeds thereof, may be used by the state of New Mexico for the purpose of fully protecting any and all holders of policies so registered, and all obligations to the State in this connection.

"Therefore, said Company by its successor * * * Two Republics * * * hereby and herewith, in consideration of the foregoing, sells, assigns, and transfers to the State of New Mexico * * * all the rights, title, and interest * * * in and to the securities now on deposit * * *[1]

"Said second party [the State] to have and to hold said securities for the purpose of satisfying just claims of any policy holder in case of possible default of [Two Republics] in the matter of satisfying the same, and for all purposes hereinabove mentioned * * *"

On April 25, 1923, Two Republics and the Wallaces entered into a supplemental agreement modifying the original contract in particulars not material here, after which on July 27, 1923, Two Republics again made an "Assignment of Securities" using practically identical language as the one quoted above. By a supplemental agreement dated May 15, 1924, Two Republics and the Wallaces agreed to substitute the Deputy for Insurance of New Mexico as the escrow agent.

A new insurance code was adopted in New Mexico by Ch. 135 of the Laws of New Mexico, 1925, by which § 38 of the 1909 act was repealed, and § 55 of the 1925 act was enacted, being § 71-155, New Mexico Compiled Laws of 1929, which provides in part: "When any policies have heretofore been registered with the insurance department of the state of New Mexico or with the office of the bank examiner under the conditions of section 38, chapter 48 (Rep.), of the session laws of the year 1909 * * * it shall be the duty of each company having . any such registered policies in force * * * to at all times maintain approved securities of one of the kinds authorized as an investment for any insurance company with the corporation commission of an amount equal to the said net value [of the registered policies] * * *."

On March 3, 1928, Two Republics transferred all its assets to Mississippi Valley Life Insurance Company, hereafter called Mississippi, and which was organized in Illinois. Mississippi assumed the liability of Two Republics under the registered policies. Conveyance of the land in question by Two Republics to Mississippi was properly recorded in Maricopa County, Arizona, and the instrument of conveyance then deposited by Mississippi with the New Mexico Superintendent of Insurance.

Wallace died in 1928, and his wife was appointed administratrix of his estate, and thereafter the administratrix and Mississippi extended the time within which the contract for sale of the land might be performed for two years after January 16, 1931. On March 18, 1929, Mississippi executed and delivered to the "State of New Mexico" an assignment of the Wallace contract, in substantially the same form as the previous assignments made by Two Republics.

On April 25, 1932, Mississippi became insolvent, and subsequently two receivers were appointed for it by a state court in Missouri, and a receiver was appointed for it in a state court in Illinois.

On May 18, 1932, the Illinois receiver and the Missouri receivers entered into a contract with Republic Life Insurance Company of Dallas, Texas, hereafter called Republic, which was organized in Texas. By such contract, Republic assumed the liability of Mississippi under the registered policies, but established a lien against each policy equal to the entire legal reserve thereon. The contract further provided: "On all policies which are secured by deposit with the Insurance Department of the State of New Mexico [Republic] * * * shall be entitled to receive from said Insurance Department * * * securities now on deposit to the value of the reserve of the policies on which said party of the first part assumes liability hereunder and the policy holders accept such assumption, and [Republic] * * * shall, with the consent of the Insurance Department of the State of New Mexico, be entitled to have said reserves credited to it in such manner as the Insurance Department of the State of New Mexico shall approve, and [the Illinois receiver] * * * shall be entitled to the reserves on deposit with the said Insurance Department of the State of New Mexico, in excess of the claims which are against the said deposits. The lien on any such policy shall be reduced by the amount credited to or received by [Republic] * * * from said deposit with said Insurance Department of the State of New Mexico on account thereof."

Thereafter and on August 22, 1932, a receiver for Mississippi was appointed by a

---

[1] The Wallace contract was included.

state court in Arizona. Republic claiming to be the owner of the Wallace contract transferred the contract to one Banta[2] who brought suit in a state court of Arizona against the Arizona receiver,[3] and obtained ·a decree adjudging Banta to be the owner in fee simple of the lands covered by the Wallace contract. Thereafter the Arizona receiver, Republic, and Wallace's administratrix in such capacity and individually, each made a deed covering the lands in question to Banta, and Banta conveyed such land to Vaughan,[2] in trust for Republic. All such conveyances were recorded. Thereafter Vaughan conveyed the lands in question to Republic, and Republic conveyed such lands to R. L. Daniel, Chairman of the Board of the Insurance Commission of the State of Texas, both of such conveyances being recorded.

Although Republic had assumed liability on the policies registered in New Mexico, it has not at any time since submitted to the jurisdiction and authority of the New Mexico Superintendent of Insurance, and has not complied with the New Mexico statute relating to registered policies, as that such officer has been compelled to rely upon the securities in his hands at the date of Mississippi's insolvency.

In a state court in New Mexico, appellant was appointed liquidating receiver of and for the Superintendent of Insurance of New Mexico with respect to the· assets in the securities deposited with such Superintendent as required by the statute relating to registered policies. The New Mexico court by order authorized commencement of this suit. In addition, the New Mexico Superintendent of Insurance on March 18, 1937, executed an assignment, transferring to appellant all his right, title and interest in the lands in question, and providing: "It is expressly understood that the interest hereby transferred is a lien upon the lands aforesaid in the nature of a mortgage created and existing by and through the deposit of certain documents [hereinabove described] ·* * .* for the security of the full legal reserve of policies of insurance issued by National * * * and registered * * * and that the purpose of this assignment is to invest the assignee [appellant] * * * with full power and authority to sue for and recover said lien and to have the same established and en-

forced by foreclosure or otherwise for the purpose of realizing upon the same for the security of such policy-holders * * *"

Such are the facts as alleged in the amended bill of complaint. The original bill was filed on March 22, 1937. The defendants were Republic, the Illinois receiver, the Missouri receivers, Vaughan, the .occupant of the lands in question, Wallace's widow and minor children, and Daniel as Chairman of the Board of the Insurance Commission of Texas. Appellant prayed for a decree declaring the existence of the lien, and for its foreclosure.

Republic, Vaughan and the occupant moved to dismiss the amended bill on the following grounds: (1) appellant "has not legal capacity to sue"; (2) the amended bill did not state facts sufficient to constitute a cause of suit; and (3) the right, if any, to foreclose the lien was barred by section 2061, Subd. 3 of Revised Code of Arizona, 1928. The motion to dismiss was granted, and this appeal was taken from the judgment of dismissal.

It is apparent that the foundation of the suit is the claim of appellant that a lien was created on the Wallace contract in favor of the New Mexico Superintendent of Insurance by the deposit of the Wallace contract with him by Two Republics. It is contended that § 38 of the 1909 act created the lien. Since that section does not clearly express an intention that a lien was or was not to be created by the deposit of securities, or if such a lien was to be created, then who was the proper party to enforce the same, we directed that new briefs on·those questions be filed. Realizing the importance of the question to the New Mexico authorities and policy holders, the doubt as to the effect of the statute, and the fact that such questions can only be authoritatively settled by the courts of New Mexico, we think the. statute should not be interpreted by us unless necessary in order to decide the case, and we find no such necessity in this case.

██ In order to determine what rights appellant now has, it is necessary to determine the relation between Two Republics and the Wallaces after execution of the contract. Three possibilities exist. The contract might be an equitable mort-

---

[2] He was an officer of Republic.

[3] The other parties to the suit, if any, are not named.

gage, an option, or a contract to sell realty. Appellant contends it is the former. While transactions, differing in nature from the one here involved, have been held to be mortgages in Arizona,[4] we think in that state it would be held that the agreement was a contract to sell realty.[5] It does not meet the test of an option.[6]

The next step is to determine what the respective interests of a vendee and vendor are under a contract to sell in Arizona. Generally speaking, the majority rule is that under such a contract, the vendor retains the legal title and the vendee obtains the equitable title; but in a few states, it is held that the vendor has both the legal and equitable title, the vendee having neither.[7]

In Arizona, it was early announced that where there was a conveyance by deed absolute without express reservation of a lien for the unpaid portion of the purchase price, an implied vendor's lien for such purchase price did not arise.[8] The decision was expressly based on the ground that vendor's liens were unsuited to Arizona conditions. Apparently such conditions also influenced the decisions regarding contracts to sell realty. While the vendee's interest under such a contract while it is in force, has been held to be assignable, inheritable and subject to attachment and execution,[9] we are here concerned with the nature of the vendor's interest which was assigned to the New Mexico Superintendent of Insurance.

The vendee's interest under a contract to sell, while the same is in force, has been described as an equity,[10] but nowhere has it been described as an equitable title. Examination of Lewis v. Rouse, 29 Ariz. 156, 159, 160, 240 P. 275, and Snow v. Kennedy, 36 Ariz. 475, 286 P. 930, discloses pertinent statements to the effect that no title passed from the grantor to the grantee, and because of that fact, the grantee had no interest in the realty to which a lien in favor of the grantor could attach. There being no lien on the land it is apparent that upon assignment of the contract by the vendor [Two Republics] to the New Mexico Superintendent of Insurance, the latter obtained none, but only "the right to collect the balance due thereon". Button v. Traders' Trust Co., 157 Wash. 625, 630, 289 P. 1010, 1013.

As a consequence of such rule, it follows that the vendor may simply declare a forfeiture of the vendee's interest upon default by the vendee. The right to declare a forfeiture has been regulated in Arizona by Rev.Code of Ariz. 1928, § 2781, prohibiting forfeitures within specified times after default. Such statute is further indication of the rule in Arizona, for if the vendee had an equitable title under such a contract, it could be disposed of only by foreclousure.

Since this suit was commenced to enforce a lien on the land in question, and since we hold that appellant's predecessor did not succeed to a lien, and the claim therefor cannot be upheld, we express no opinion, in the absence of a contention by appellant in that respect, as to appellant's right to recover a personal judgment on the contract.

Affirmed.

[4] Coffin v. Green, 21 Ariz. 54, 185 P. 361; Stephen v. Patterson, 21 Ariz. 308, 188 P. 131; Gamble v. Consolidated National Bank, 33 Ariz. 117, 262 P. 612.

[5] Lewis v. Rouse, 29 Ariz. 156, 159, 160, 240 P. 275; Treadway v. Western Cotton Oil, etc., Co., 40 Ariz. 125, 137, 10 P.2d 371.

[6] United Farmers' City Mkt., Inc., v. Donofrio, 43 Ariz. 35, 41, 29 P.2d 144.

[7] 66 C.J. 702, § 262.

[8] Baker v. Fleming, 6 Ariz. 418, 59 P. 101, 2 Ann.Cas. 370.

[9] Union Oil Co. v. Norton-Morgan Com. Co., 23 Ariz. 236, 202 P. 1077.

[10] Snow v. Kennedy, 36 Ariz. 475, 286 P. 930.